2024-2059

# United States Court of Appeals
# for the Federal Circuit

---

**PERFORMANCE ADDITIVES, LLC,**

*Plaintiff-Appellant,*

*v.*

**UNITED STATES,**

*Defendant-Appellee.*

---

Appeal from the United States Court of International Trade,
Court No. 22-cv-00044, Judge Jane A. Restani

---

## PRINCIPAL BRIEF OF PLAINTIFF-APPELLANT,
## PERFORMANCE ADDITIVES, LLC.

---

John M. Peterson
  *Counsel of Record*
Patrick B. Klein
NEVILLE PETERSON LLP
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

September 9, 2024

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Ave Suite 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### <u>CERTIFICATE OF INTEREST</u>

**Case Number** 2024-2059

**Short Case Caption** Performance Additives, LLC v. US

**Filing Party/Entity** Performance Additives, LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/16/2024

Signature:  /s/ John M. Peterson

Name:    John M. Peterson

FORM 9. Certificate of Interest

| 1. Represented Entities.<br>Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest.<br>Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders.<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Performance Additives, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐     None/Not Applicable            ☐     Additional pages attached

| | | |
|---|---|---|
| John P. Donohue<br>Neville Peterson LLP | | |
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)   ☐   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑     None/Not Applicable            ☐     Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTEREST ............................................................. ii

TABLE OF CONTENTS....................................................................... iii

TABLE OF AUTHORITIES ................................................................iv

STATEMENT OF RELATED CASES ....................................................1

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES..............................................................2

STATEMENT OF THE CASE.................................................................2

SUMMARY OF THE ARGUMENT .......................................................4

ARGUMENT ........................................................................................11

I.     Standard of Review..................................................................11

II.    The One-Year Limit on Liquidation Set Out in 19 U.S.C. § 1504(a)(2)(A) Does Not Depend on the Liquidation Status of Designated Import Entries. ............................................................................................12

III.   19 U.S.C. § 1504(a)(2)(B) Does Not Limit "Deemed Liquidation" of Drawback Claims under § 1504(a)(2)(A); Rather, it Provides *Additional* Opportunities for Drawback Claimants to Pursue "Deemed Liquidations. ..17

IV.    The Trade Court's Ruling Yields an Anomalous Result Under Which Many, if not Most, Drawback Claims Would Not be Subject to Any Deadline for Liquidation. ...........................................................22

CONCLUSION .....................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Bates v. United States*, 522 U.S. 23 (1997)..............................................................20

*Bell BCI Co. v. United States,* 570 F.3d 1337 (Fed. Cir. 2009) ...........................11

*Connecticut Nat'l Bank v. Germain*, 503 U.S. 249 (1992)....................................21

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc*., 447 U.S. 102 (1980) .......20

*Cox v. West*, 149 F.3d 1360 (Fed. Cir. 1998) .........................................................20

*Ford Motor Company v. United States*, 44 F. Supp. 3d 1330 (Ct. Int'l Tr.
  2015)....................................................................................................................8

*Freytag v. Commissioner*, 501 U.S. 868 (1991) ............................................ 20, 21

*Guess? Inc. v. United States*, 944 F.2d 855 (Fed. Cir. 1991) .................................12

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1
  (2000) .................................................................................................................19

*K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988)..............................................20

*Lynteq Inc. v. United States*, 976 F.2d 693 (Fed. Cir. 1992) .................................12

*Rubin v. United States*, 449 U.S. 424 (1981) .........................................................20

*Sebelius v. Cloer*, 569 U.S. 369 (2013) .................................................................19

*Tennessee Valley Auth. v. Hill*, 437 U.S. 153 (1978) .............................................20

*Timex V.I., Inc. v. United States*, 157 F.3d 879 (Fed. Cir. 1998). ..........................19

*Universal Electronics Inc. v. United States*, 112 F.3d 488 (Fed. Cir. 1997)...........12

*W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83 (1991) ................................20

**Statutes**

19 U.S.C. § 1313 ....................................................................................... 2, 4, 7, 19

19 U.S.C. § 1501 ...................................................................................................7, 10

19 U.S.C. § 1504 .............................................................................................. passim

19 U.S.C. § 1514 ......................................................................................................10

19 U.S.C. § 1677h ....................................................................................................18

28 U.S.C. § 1295 ........................................................................................................2

28 U.S.C. § 1581 ........................................................................................................3

28 U.S.C. § 1581 ........................................................................................................2

28 U.S.C. § 2107 ........................................................................................................1

28 U.S.C. § 2645 ........................................................................................................1

Customs Procedural Reform and Simplification Act of 1978, Pub. L. 95-410,
  92 Stat. 888 (1978) ...........................................................................................12

Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. 108-
  429, 118 Stat. 2434 (2004) .................................................................................4

**Other Authorities**

S. Rep. 108-28 (2003) ...............................................................................................5

S. Rep. 95-778, at 32 (1978). ....................................................................13

Treasury Decision 98-16, 63 Fed. Reg. 10970 (1998). ..........................13

U.S. Gov't Accountability Office, GAO 20-182, Customs and Border
   Protection: Risk Management for Tariff Refunds Should be Improved
   (2019) ...................................................................................................15

**Regulations**

19 C.F.R. § 190.2 ........................................................................................2

19 C.F.R. § 190.81 ..................................................................... 15, 21, 25

19 C.F.R. § 190.92 ....................................................................................19

Plaintiff-Appellant, Performance Additives LLC ("Performance Additives" or "Plaintiff-Appellant"), in accordance with Rules 28(a) and 32(a) of the Federal Rules of Appellate Procedure, and the Rules of Practice of the U.S. Court of Appeals for the Federal Circuit, hereby submits its principal brief in this appeal.

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the Rules of Practice of the U.S. Court of Appeals for the Federal Circuit, counsel for Plaintiff-Appellant, Performance Additives, makes the following statement:

1. Counsel for Plaintiff-Appellant is aware of the following action, currently pending in the U.S. Court of International Trade, which will be directly affected by this Court's decision in the instant appeal: *Performance Additives, LLC v. United States*, Court No. 22-86.

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant, Performance Additives, appeals from the final judgment of the U.S. Court of International Trade ("CIT" or "Trade Court") in *Performance Additives LLC v. United States*, Slip Op. 24-65, dated May 31, 2024. Appx1.

Performance Additives filed a timely notice of appeal on July 9, 2024, pursuant to 28 U.S.C. §§ 2107 and 2645(c), and Rule 4(a)(4) of the Federal Rules of Ap-

pellate procedure. The CIT possessed subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1581(a), and this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1295(a)(5). The appeal was docketed in this Court on July 10, 2024.

## STATEMENT OF THE ISSUES

Whether Plaintiff-Appellant, Performance Additives' claim for petroleum derivatives substitution drawback under 19 U.S.C. § 1313(p) was deemed liquidated by operation of law, 19 U.S.C. § 1504(a)(2)(A), when Customs failed to liquidate the claim, or extend the period for its liquidation, 19 U.S.C. § 1504(b), within one year after the claim was filed.

## STATEMENT OF THE CASE

The facts are not in dispute. Performance Additives filed drawback claim[1] B10-0004498-1 on March 10, 2020, seeking payment of $1,328,589.84 in duty drawback under 19 U.S.C. § 1313(p). Appx3. The claim designated some forty-eight (48) import entries of polymers as the basis for the drawback claim. Customs did not

---

[1] A "drawback entry" is defined as "the document containing a description of, and other required information concerning, the exported or destroyed article upon which a drawback claim is based and the designated imported merchandise for which drawback of the duties, taxes, and fees paid upon importation is claimed." 19 C.F.R. § 190.2. A "drawback entry" is defined as "the drawback entry and related documents required by regulation which together constitute the request for drawback payment." *Id.* For clarity, this brief will refer to plaintiff's drawback submission as a "claim" and will use the word "entry" to describe the import consumption entries designated in the drawback claim as the basis for payment of drawback.

2

liquidate the drawback claim within one-year of its filing, nor did it extend the period for liquidation pursuant to 19 U.S.C. § 1504(b).

As of the one-year anniversary of the date of filing of the drawback claim—*i.e.,* March 10, 2021—all of the 48 import entries designated in drawback claim B10-0004498-1 had been "liquidated" by Customs. Appx11. However, some of the import entries had not been liquidated for at least 180 days. *Id.* Performance Additives contends that its entry was deemed liquidated on the anniversary date when Customs had failed to extend the one-year liquidation period.

On May 14, 2021—after the date the "deemed liquidation" occurred—Customs purported to liquidate Performance Additives' claim "no drawback." Appx27. Plaintiff-Appellant timely protested the Customs liquidation as untimely and improper. Appx4. When Customs denied its protest, Performance Additives timely commenced this action in the CIT, which exercised subject matter jurisdiction pursuant to 28 U.S.C. § 1581(a). *Id.*

The Trade Court ruled that Plaintiff-Appellant's claim had not been "deemed liquidated" pursuant to 19 U.S.C. § 1504(a)(2)(A), because some of the import entries were not "liquidated *and final*"—*i.e.,* the entries had not been liquidated for at least 180 days. Appx15-Appx16. The CIT drew the "liquidated and final" requirement from 19 U.S.C. § 1504(a)(2)(B), which is a statute prescribing a special procedure for a particular situation, which the Trade Court admitted was inapplicable to

3

Performance Additives' drawback claim. Appx13. It held that this condition prevented the "deemed liquidation" of the entry from occurring pursuant to 19 U.S.C. § 1504(a)(2)(A), even though that statute prescribes a one-year limit on liquidation, without regard to the liquidation status of import entries designated in the drawback claim. Appx15-Appx16.

For the reasons set out herein, Performance Additives submits that the Trade Court's interpretation is incorrect, as a matter of law.

## SUMMARY OF THE ARGUMENT

This appeal involves the issue of when claims for duty drawback, filed pursuant to Section 313 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1313, are "deemed liquidated" by operation of law under 19 U.S.C. § 1504(a)(2)(A). It is purely an issue of legal construction based upon undisputed facts.

Historically, there was no statutory time limitation on the liquidation of drawback claims. However, section 1563(e) of the Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. 108-429, 118 Stat. 2434 (2004), amended Section 504 of the Tariff Act of 1930, to provide the following limitation on the liquidation of drawback claims:

**(2) Entries or claims for drawback**

(A) In general

Except as provided in subparagraph (B) or (C), unless an entry or claim for drawback is extended under subsection (b) or suspended as required

4

by statute or court order, an entry or claim for drawback not liquidated within 1 year from the date of entry or claim shall be deemed liquidated at the drawback amount asserted by the claimant or claim. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

19 U.S.C. § 1504(a)(2)(A). The legislative history to this 2004 enactment indicates that Congress intended to impose the same one-year limitation on liquidation of drawback claims that it had years earlier imposed on the liquidation of import entries in 19 U.S.C. § 1504(a)(1).[2] *See* S. Rep. 108-28 at p. 172-173 (2003) (Customs should

---

[2] 19 U.S.C. § 1504(a)(1) provides:

**(a) Liquidation**

(1) Entries for consumption
Unless an entry of merchandise for consumption is extended under subsection (b) of this section or suspended as required by statute or court order, except as provided in section 1675(a)(3) of this title, an entry of merchandise for consumption not liquidated within 1 year from—

(A) the date of entry of such merchandise,

(B) the date of the final withdrawal of all such merchandise covered by a warehouse entry,

(C) the date of withdrawal from warehouse of such merchandise for consumption if, pursuant to regulations issued under section 1505(a) of this title, duties may be deposited after the filing of any entry or withdrawal from warehouse,

(D) if a reconciliation is filed, or should have been filed, the date of the filing under section 1484 of this title or the date the reconciliation should have been filed, whichever is earlier; or

(E) if a reconfigured entry is filed under an import activity summary statement, the date the import activity summary statement is filed or should have been filed, whichever is earlier;

shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted by the importer of record. Notwithstanding

liquidate "drawback claims within a specified period of time, as U.S. Customs already does for merchandise entered for consumption".).

The one-year limit on liquidation of an import entry or a drawback claim may be extended by Customs for up to three (3) one-year periods pursuant to 19 U.S.C. § 1504(b), which, as amended by the 2004 act, provides:

**(b) Extension**

The Secretary of the Treasury may extend the period in which to liquidate an entry if—

(1) the information needed for the proper appraisement or classification of the imported or withdrawn merchandise, or for determining the correct drawback amount, or for ensuring compliance with applicable law, is not available to the Customs Service; or

(2) the importer of record or drawback claimant, as the case may be, requests such extension and shows good cause therefor.

The Secretary shall give notice of an extension under this subsection to the importer of record or drawback claimant, as the case may be, and the surety of such importer of record or drawback claimant. Notice shall be in such form and manner (which may include electronic transmittal) as the Secretary shall by regulation prescribe. Any entry the liquidation of which is extended under this subsection shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record, or the drawback amount asserted by the drawback claimant, at the expiration of 4 years from the applicable date specified in subsection (a).

---

section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

Plaintiff's drawback claim B10-0004498-1, which is the subject of this appeal, was filed as a 19 U.S.C. § 1313(p) claim for "petroleum derivatives substitution drawback" on March 10, 2020. It designated some forty-eight (48) import consumption entries as the basis for drawback, following the exportation of substitutable goods, and it sought drawback in the total amount of $1,328,589.84. Customs did not liquidate the claim within one-year of its filing, nor did Customs extend liquidation of the claim pursuant to 19 U.S.C. § 1504(b). Plaintiff contends that this claim was "deemed liquidated" one-year after its date of filing—*i.e.*, on March 10, 2021—pursuant to 19 U.S.C. § 1504(a)(2).

On May 14, 2021—more than one-year after the filing of the claim—Customs purported to liquidate the claim "no drawback." Plaintiff contends that Customs' purported May 14, 2021 "no drawback" liquidation was invalid, since the claim had been previously deemed liquidated by operation of law on March 10, 2021.[3] CBP did not liquidate the drawback claim which is the subject of this appeal within one-year after its filing, nor did it extend liquidation as provided in 19 U.S.C. § 1504(b).

On cross-motions for summary judgment, the Trade Court granted each party partial summary judgment. Appx1. The Trade Court granted Performance Additives' summary judgment with respect to one drawback claim whose liquidation had

---

[3] Customs styled its May 14, 2021, action as a "liquidation," and not as a re-liquidation pursuant to 19 U.S.C. § 1501. Appx27.

been extended pursuant to 19 U.S.C. § 1504(b), but which Customs failed to liquidate within the extended deadline.[4] But the lower court granted the government's Cross-Motion for Summary Judgment with respect to the drawback claim which is the subject of this appeal.

In granting the government's Cross-Motion for Summary Judgment, the Trade Court held that the optional deemed liquidation procedure set out at 19 U.S.C. § 1504(a)(2)(B) constituted a general exception to the "one-year deemed liquidation rule" of 19 U.S.C. § 1504(a)(2)(A). Appx9.

While 19 U.S.C. § 1504(a)(2)(**A**), sets out a one-year "deemed liquidation" rule for drawback claims, § 1504(a)(2)(**B**) addresses a particular situation not present in this case. It provides:

**(B) Unliquidated imports**

An entry or claim for drawback whose designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A), or within the 1-year period described in subparagraph (C),[5] shall be deemed liquidated upon the deposit of estimated duties on the unliquidated imported merchandise, and upon the filing with the Customs Service of a written request for the liquidation of the drawback entry or claim. Such a request must include a waiver of any right to payment or refund under other provisions of

---

[4] The government did not appeal or cross-appeal with respect to this claim.

[5] 19 U.S.C. § 1504(a)(2)(C) sets out a "transitional rule" giving CBP one-year to liquidate drawback claims which were unliquidated when the 19 U.S.C. § 1504(a)(2)(A) limitation on liquidation was enacted. It is not relevant to this appeal. *See Ford Motor Company v. United States*, 44 F. Supp. 3d 1330, 1334 (Ct. Int'l Tr. 2015).

law. The Secretary of the Treasury shall prescribe any necessary regulations for the purpose of administering this subparagraph.

By its terms, 19 U.S.C. § 1504(a)(2)(B) deals with situations involving "unliquidated imports." It has no relevance to the instant case, since all import entries designated in Performance Additives' claim had been liquidated prior to the one-year anniversary of filing of the drawback claim. Moreover, § 1504(a)(2)(B) provides for the payment of drawback based on "estimated duties." As of the anniversary date of its filing, Performance Additives' claim had no "estimated duties" for drawback to be paid on, only "liquidated" duties. Even though it did not deal with the facts of Performance Additives' claim, and even though Performance Additives could not have invoked the procedure set out therein, the Trade Court mistakenly held that § 1504(a)(2)(B) was a general exception to the one-year rule of "deemed liquidation" set out in §1504(a)(2)(A).

The Trade Court stated the relevant issue as follows:

> The question before the court here is which subparagraph, or subparagraphs, of 19 U.S.C. § 1504 governs Performance's two drawback claims. Depending upon which subparagraph applies, Performance's drawback claims were either liquidated by operation of law, or not—ultimately deciding whether Performance receives the drawback amount it asserted as the drawback claimant.

Appx10. The Trade Court sought to import the "liquidated and final" language of § 1504(a)(2)(**B**) into the language of § 1504(a)(2)(**A**), which provides a clear

one-year limitation on the liquidation of drawback claims, without any reference to the liquidation status of import entries designated in those claims.

The Trade Court held:

> By its terms subparagraph (B) is available where a drawback claim's designated import entries have not been liquidated and become final within one-year of the filing of the drawback claim. In this scenario, subparagraph (B) provides a mechanism by which a claimant may prompt (or "force") Customs to liquidate its drawback claim before its designated import entries, if a claimant places a deposit and files a written request. 19 C.F.R. § 190.81(b); see supra pp. 4–5. As indicated, Plaintiff concedes it does not qualify under this provision. Pl.'s OA Resp. at 13. But that is not the only import of subparagraph (B). It is true that Drawback Claim 1's underlying consumption entries had liquidated within one-year of the filing of the drawback claim. Yet, as the Government argues, subparagraph (B) makes clear that drawback claims whose import entries have not been liquidated and become final within one-year of the filing of the drawback claim are excepted from the general deemed liquidated drawback provision. "Final" is not defined anywhere in the deemed liquidation statute. See 19 U.S.C. § 1504. 19 U.S.C. § 1514, however, provides the answer.

Appx13-Appx14. Noting that under 19 U.S.C. § 1514(a), an entry is "liquidated and final" after the 90-day reliquidation period, 19 U.S.C. § 1501, and 180-day protest period expired, the Trade Court held that the "liquidated and final" language in § 1504(a)(2)(B) precluded Performance Additives' drawback claim from being "deemed liquidated" under § 1504(a)(2)(A)—even though that statute mandates a one-year liquidation period, and makes no mention of the status of import entries designated in the claim, and even though the Trade Court admitted that § 1504(a)(2)(B) is factually inapplicable to Performance Additives' claim.

10

The Trade Court's determination is incorrect, as a matter of law, for several reasons:

> ➢ It imposes on the "deemed liquidation" rule of 19 U.S.C. § 1504(a)(2)(A) conditions and limitations not appearing in the statute;

> ➢ It imposes on Performance Additives' drawback claim limitations from a statute, 19 U.S.C. § 1504(a)(2)(B), which describes a particular situation not applicable to the claim; and

> ➢ It creates an anomaly where a broad class of drawback claims will be subject to *no* time limitation on liquidation, frustrating the Congressional intent in enacting 19 U.S.C. § 1504(a)(2)(A).

The better, consistent, and correct construction is that 19 U.S.C. § 1504(a)(2)(A) means what it says: if Customs fails to extend liquidation of a drawback claim, the claim liquidates by operation of law on the one-year anniversary of its filing. Only two things can prevent the deemed liquidation of a drawback claim by operation of law: (i) Customs' liquidation of the claim before the one-year anniversary; or (ii) extension of liquidation of the claim as specified in 19 U.S.C. § 1504(b). Neither occurred in this case.

## ARGUMENT

## I.    Standard of Review.

This Court reviews legal holdings *de novo* and examines factual findings for clear error. *Bell BCI Co. v. United States,* 570 F.3d 1337, 1340 (Fed. Cir. 2009). The Court also reviews the lower court's interpretation of statutory provisions *de novo* and without deference. *Lynteq Inc. v. United States*, 976 F.2d 693, 696 (Fed. Cir.

1992); *Guess? Inc. v. United States*, 944 F.2d 855, 857 (Fed. Cir. 1991). This Court reviews decisions of the CIT denying motions for summary judgment, and granting cross-motions for summary judgment, *de novo*.

Where, as here, matters are resolved upon summary judgment, and there are no disputed factual issues, this Court's inquiry resolves entirely into one of law, which this Court reviews *de novo,* and without regard to any presumption of correctness which might otherwise attach to Customs' determination in liquidation. *See Universal Electronics Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997).

## II. The One-Year Limit on Liquidation Set Out in 19 U.S.C. § 1504(a)(2)(A) Does Not Depend on the Liquidation Status of Designated Import Entries.

Historically, there were no temporal limitations on the liquidation of import entries or drawback claims. Section 209 of the Customs Procedural Reform and Simplification Act of 1978, Pub. L. 95-410, 92 Stat. 888 (1978), enacted what is now Section 504(a)(1) of the Tariff Act, 19 U.S.C. § 1504(a)(1), which set a one-year limitation on Customs' liquidation of import entries. Under this provision, import entries not liquidated within one-year of the date of entry were "deemed liquidated" at the rate and amount of duty declared by the importer in the entry. Section 504(b) of the Tariff Act, enacted by the 1978 Act, authorized Customs to "extend" the liquidation period for up to three (3) one-year periods, allowing a maximum of four (4) years for the agency to liquidate the entry. If the entry had not been liquidated at the

end of four years, it was deemed liquidated "as entered."[6] For more than a quarter century after this enactment, there were no limitations on the liquidation of drawback claims.[7]

The current language of 19 U.S.C. § 1504(a)(2)(A) , and the introduction of limits on the liquidation of drawback claims, resulted from enactment of Section 1563(e) of the Miscellaneous Trade and Technical Corrections Act, Pub. L. 108-429, 118 Stat. 2434 (2004). It mirrors the operation of § 1504(a)(1); it prescribes deemed liquidation after one-year, and allows up to three (3) one-year extension of the liquidation period. The legislative history of the statute indicates that Congress intended

---

[6] The Senate Report accompanying the 1978 Act noted:

The provisions adopted by the committee would increase certainty in the customs process for importers, surety companies and other third parties with a potential liability relating to a customs transaction. Under the present law, an importer may learn years after goods have been imported and sold that additional duties are actually due, or may have deposited more money than are actually due but be unable to recover the excess for years as he awaits liquidation. Surety companies, which are jointly liable with importers for additional duties, would be better able to control their liabilities. Sureties would also be better protected against losses resulting from the dissolution of their principals in instances where there has been undue delay in liquidating entries.

S. Rep. 95-778, at 32 (1978).

[7] Because delays in liquidating drawback claims were so lengthy, Customs in 1998 adopted revised regulations to provide for "accelerated payment" of drawback claims in advance of liquidation. *See* Treasury Decision 98-16, 63 Fed. Reg. 10970, 11028 (1998).

that the same limitations on liquidation be imposed on both import entries and draw-

back claims:

> Section 1713 (e):[8] Limitation on Liquidation —This provision clarifies limitations on liquidation by establishing a statutory time frame for the liquidation of drawback claims. Existing law only sets forth a time line for the liquidation of import entries and currently does not require the liquidation of drawback claims within a statutory time frame. As a result, drawback claims are generally not liquidated by U.S. Customs within a reasonable period of time and therefore remain outstanding for years. Thus, without liquidation, a contingent liability for U.S. businesses (i.e., drawback claimant) is created for the amount of each drawback claim because U.S. Customs can challenge the drawback amount or value of the goods for which drawback was claimed until liquidation occurs.
>
> If drawback claims are never liquidated, for an open-ended time period the drawback claimant's claim unfairly remains subject to challenge by U.S. Customs. This creates an unwarranted liability and the possibility that the claimant will have to reimburse the U.S. Treasury any drawback monies paid to the claimant—even several years from when the claim was actually made and money was paid to the drawback claimant. This change would remove such liability overhanging drawback claimants by requiring U.S. Customs (1) to liquidate existing drawback claims, and (2) to liquidate future drawback claims within a specified period of time, as U.S. Customs already does for merchandise entered for consumption.

S. Rep. 108-28 at 172-73 (2003) (emphasis added).

Significantly, the legislative history describes the adoption of a "statutory time

frame" for the liquidation of drawback claims; it does not suggest that the time frame

---

[8] The numbering of the provision was different at the time the Senate Report was written.

is conditioned on non-temporal factors, such as the liquidation status of import entries designated as the basis of those claims.[9]

The Trade Court erroneously imported into 19 U.S.C. § 1504(a)(2)(**A**) requirement from 19 U.S.C. § 1504(a)(2)(**B**), which provides a separate procedure, not applicable under these facts, whereby drawback claimants may obtain a "deemed liquidation" of pending claims. Titled "unliquidated imports," the subsection allows a drawback claimant whose claims include import entries not yet liquidated to be "deemed liquidated" if the claimant submits a request to CBP to liquidate its drawback claim on the basis of "estimated duties," including a "waiver of any right to payment or refund under other provisions of law." The Secretary of the Treasury has prescribed regulations for administering this subparagraph of the statute.[10]

---

[9] Even though the statute provides a 4-year maximum period in which liquidation of a drawback claim may be extended, it appears that Customs often does not honor or observe that limitation. *See* U.S. Gov't Accountability Office, GAO 20-182, Customs and Border Protection: Risk Management for Tariff Refunds Should be Improved (2019), at 24. ("CBP has not adequately managed the growing workload drawback specialists have been experiencing since TFTEA (Trade Facilitation and Trade Enforcement Act of 2015). Drawback specialists told us that they had been experiencing increasing workloads since CBP implemented the changes from TFTEA. The largest Drawback Centers expect their backlog of old claims will take about 5 years to work through").

The suggestion that Customs is taking 5 years to clear its backlog of drawback claims suggests that the 4-year outer limit on liquidation of claims, *see* 19 U.S.C. § 1504(b), is not being observed.

[10] 19 C.F.R. § 190.81(b) provides the regulatory requirements:

(b) Claims based on estimated duties.

(1) Drawback may be paid upon liquidation of a claim based on estimated duties if one or more of the designated import entries have not been liquidated, or the liquidation has not become final (because of a protest being filed) (see also § 173.4(c) of this chapter), only if the drawback claimant and any other party responsible for the payment of liquidated import duties each files a written request for payment of each drawback claim, waiving any right to payment or refund under other provisions of law, to the extent that the estimated duties on the unliquidated import entry are included in the drawback claim for which drawback on estimated duties is requested under this paragraph. The drawback claimant must, to the best of its knowledge, identify each import entry that has been protested and that is included in the drawback claim. A drawback entry, once finally liquidated on the basis of estimated duties pursuant to paragraph (e)(2) of this section, will not be adjusted by reason of a subsequent final liquidation of the import entry.

(2) However, if final liquidation of the import entry discloses that the total amount of import duty is different from the total estimated duties deposited, except in those cases when drawback is 100% of the duty, the party responsible for the payment of liquidated duties, as applicable, will:

(i) Be liable for 1 percent of all increased duties found to be due on that portion of merchandise recorded on the drawback entry; or

(ii) Be entitled to a refund of 1 percent of all excess duties found to have been paid as estimated duties on that portion of the merchandise recorded on the drawback entry.

**III.  19 U.S.C. § 1504(a)(2)(B) Does Not Limit "Deemed Liquidation" of Draw-back Claims under § 1504(a)(2)(A); Rather, it Provides *Additional* Opportunities for Drawback Claimants to Pursue "Deemed Liquidations."**

Far from limiting "deemed liquidations" of drawback claims under 19 U.S.C. § 1504(a)(2)(A), the provisions of 19 U.S.C. § 1504(a)(2)(B), *expand* opportunities for drawback claimants to secure deemed liquidations.

Thus, the special procedure provided in 19 U.S.C. § 1504(a)(2)(B) could be invoked to secure "deemed liquidation" of a drawback claim *before* the one-year time limit specified in 19 U.S.C. § 1504(a)(2)(A).[11]  Moreover, the § 1504(a)(2)(B) procedure would not be available *after* the one-year anniversary of the claim filing unless Customs had extended the one-year liquidation period in accordance with § 1504(b). However, even if Customs does extend liquidation of a claim beyond the one-year deadline, the statute can be used to obtain or force a "deemed liquidation" nonetheless.

It is undisputed that Performance Additives did not request that Customs extend the liquidation of the subject drawback claim before expiration of the one-year anniversary of its filing. Performance Additives did not invoke the optional procedure of 19 U.S.C. § 1504(a)(2)(B) *prior* to the one-year anniversary of filing its

---

[11] Logically, the special and optional procedure set out in § 1504(a)(2)(B) would be used *before* the expiration of the one-year period specified in § 1504(a)(2)(A). By virtue of the one-year limitation on liquidation of import entries, entries designated in a drawback claim would almost always be "liquidated" prior to the one-year anniversary of the filing of a drawback claim.

claim. Nor could it have invoked that procedure *after* the one-year anniversary, even if Customs had extended liquidation, because it (i) no longer had any "unliquidated imports"; and (ii) could not have asked for payment of drawback on the basis of "estimated duties" because it had no estimated duties, only liquidated duties.

There is no reason to believe, as the Trade Court ruled, that 19 U.S.C. § 1504(a)(2)(A) **limits** the operation of the one-year limit on liquidation of drawback claims. Rather, it provides a special procedure, to be used at the claimant's option, which can force Customs to liquidate a drawback claim *before* the one-year anniversary. And, even if Customs *extends* liquidation beyond the one-year limit, the claimant can frustrate the extension and force liquidation of its claim if it can satisfy the conditions for filing a 19 U.S.C. § 1504(a)(b)(B) application.[12] The provision does not limit "deemed liquidation" of drawback claims; it *expands* it.

The Trade Court's decision in this case infers words into 19 U.S.C. § 1504(a)(2)(**A**) which Congress did not place there. Such a reading of § 1504(a)(2)(A) would effectively condition the one-year liquidation requirement

---

[12] For example, one of the import entries designated in a drawback claim may include merchandise subject to an antidumping duty or countervailing duty order, which might cause the liquidation of that import entry to be suspended by operation of law or by court order for many years. In such a case, the § 1504(a)(2)(B) procedure could be invoked to secure liquidation of a party's claim for drawback of ordinary duties. Antidumping and countervailing duties are not eligible for drawback, *see* 19 U.S.C. § 1677h.

with the term "unless import entries designated in the claims have been liquidated, and 180 days have elapsed since liquidation … " But there is absolutely no indication that Congress intended such meaning.[13] Rather, drawback claims are deemed liquidated under 19 U.S.C. § 1504(a)(2)(A) one-year after they are filed, unless CBP takes action to extend the one-year period under 19 U.S.C. § 1504(b).

"'Where [a] statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). "To ascertain whether Congress had an intention on the precise question at issue, [courts] employ the 'traditional tools of statutory construction.'" *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998). Accordingly, courts "resist reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522

---

[13] To the contrary, Congress provided in § 1504(a)(2)(B) an optional mechanism which, in certain cases, could allow a claimant to frustrate such language, even if it did appear in § 1504(a)(2)(A). This furthers Congress' intent that drawback claims be liquidated promptly.

This reading of the statute comports with commercial reality. By the time a drawback claim is filed, Customs may have held the import duties on which the claim is based for up to 5 years – the time limit for filing a drawback claim. *See* 19 U.S.C. § 1313(r). Furthermore, unlike refunds of import duties, drawback refunds are paid without interest. Especially if a claimant does not have "accelerated payment of drawback" privileges, 19 C.F.R. § 190.92, it may have good business reasons to prompt Customs to process its drawback claim on an expedited basis.

U.S. 23, 29 (1997); *see also Cox v. West*, 149 F.3d 1360, 1363 (Fed. Cir. 1998) (quoting *Freytag v. Commissioner*, 501 U.S. 868, 873 (1991)) ("[W]hen [a court finds] the terms of a statute unambiguous, judicial inquiry should be complete except in rare and exceptional circumstances."). The Supreme Court has held "the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). While the Court may look to context to understand the meaning of a statute, it does not look beyond "the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).

Thus, if the language of the statute is "unambiguous, judicial inquiry is complete, except 'in rare and exceptional circumstances.'" *Rubin v. United States*, 449 U.S. 424, 430 (1981) (quoting *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 187, n.33 (1978)). "[The statute's] language is plain and unambiguous. What [one party] asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function." *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101 (1991). The Supreme Court has also "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*,

503 U.S. 249, 253-54 (1992). As a result, courts "are not at liberty to create an exception where Congress has declined to do so." *Freytag*, 501 U.S. at 874.

Reading the statutes at issue here, and their implementing regulations, as written does not produce an absurd result. Customs' regulations provide that a party receiving drawback on the basis of estimated import duties must either repay 1% of additional duties imposed upon liquidation, or reliquidation, of an import entry or receive a refund equal to 1% of any excess found to have been paid. *See* 19 C.F.R. § 190.81(b)(2). Similarly, Customs' regulations regarding protests obligate the protest filer to indicate whether protested entries are the subject of a claim for drawback. Thus, there are dual regulatory guardrails to prevent against an excessive drawback of duties.

Customs' regulations, at 19 C.F.R. § 190.81(a), suggest that when liquidating a drawback claim, CBP prefers to wait until designated import entries are "liquidated and final."[14] This overlooks the fact that *the statute* will liquidate the drawback claim itself unless CBP takes steps to prevent this result.

---

[14] Thus, 19 C.F.R § 190.81(a) provides:

(a) Time of liquidation. Drawback entries may be liquidated after:

    (1) Liquidation of the designated import entry or entries becomes final pursuant to paragraph (e) of this section; or

    (2) Deposit of estimated duties on the imported merchandise and before liquidation of the designated import entry or entries.

Here, 19 U.S.C. § 1504(a)(2)(A) clearly sets out an unambiguous rule: unless Customs acts to extend the liquidation period, a drawback claim not liquidated on the anniversary date of its filing is "deemed liquidated" as filed on its anniversary date. It was error for the Trade Court to read conditions of the optional procedure set out in 19 U.S.C. § 1504(a)(2)(**B**) into the otherwise clear time-limit command of § 1504(a)(2)(**A**).

## IV. The Trade Court's Ruling Yields an Anomalous Result Under Which Many, if not Most, Drawback Claims Would Not be Subject to Any Deadline for Liquidation.

The Trade Court's ruling yields an anomalous interpretation under which many, if not most, drawback claims would not be subject to *any* statutory deadline for liquidation, thereby frustrating Congressional intent.

Recall that, in the instant case, Customs did not extend the period for liquidation of Performance Additives' drawback claim under 19 U.S.C. § 1504(b); and yet, under the Trade Court's interpretation of the statute, the drawback claim did not

---

While the regulation articulates a preference for when Customs wishes to liquidate a drawback claim when the agency is performing the liquidation, it must be recognized that the Tariff Act itself, at 19 U.S.C. § 1504(a)(2)(A), also liquidates drawback claims "by operation of law." To avoid this result in cases where liquidation of designated import entries has not become final, CBP may in many cases need to extend the statutory liquidation period, by invoking the extension procedure of 19 U.S.C. § 1504(b). Even then, however, § 1504(a)(2)(B) creates an optional procedure whereby certain drawback claimants may obtain liquidation by operation of, and in accordance with law.

liquidate on its anniversary date pursuant to 19 U.S.C. § 1504(a)(2)(A). In this situation, what, if anything, would be the statutory deadline for liquidation of the drawback claim?

By its terms, 19 U.S.C. § 1504(a)(2)(A) provides for deemed liquidation of a drawback claim on the first anniversary of the claim's filing. It provides that "an entry or claim for drawback not liquidated within 1 year from the date of entry or claim" shall be deemed liquidated as entered on the first anniversary of the claim filing. Absent an extension pursuant to 19 U.S.C. § 1504(b), the statute does not repeat or operate on the second or third anniversary dates of claim filing, etc.

At the same time, the outside 4-year limitation on liquidation of drawback claims only applies to claims whose liquidation period was extended. Thus, 19 U.S.C. § 1504(b)(2) provides in relevant part:

> The Secretary shall give notice of an extension under this subsection to the importer of record or drawback claimant, as the case may be, and the surety of such importer of record or drawback claimant. Notice shall be in such form and manner (which may include electronic transmittal) as the Secretary shall by regulation prescribe. **Any entry the liquidation of which is extended under this subsection** shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record, or the drawback amount asserted by the drawback claimant, **at the expiration of 4 years** from the applicable date specified in subsection (a) of this section.

(Emphasis added). Thus, the 4-year limitation of liquidation applies only to any entry "the liquidation of which is extended under this subsection," which requires provision of notice of extension to the drawback claimant and its surety before the

first anniversary of the filing of the claim. Performance Additives' drawback claim, not having had its liquidation period extended in accordance with the statute, would not be subject to the 4-year outside limit specified by Congress.

The Trade Court's interpretation, if upheld, would create a large class of drawback claims, like the one at bar, which would not be subject to § 1504(a)(2)(A)'s deemed drawback rule (because they designate import entries which, while liquidated, are not "liquidated and final"), and which are not subject to the 4-year outside limit on liquidation, because they were not extended in accordance with statute. Under this reading, Customs would not be subject to *any* time limit for liquidating or disposing of these claims.

Such a result would be directly antithetical to the Congressional purposes of ensuring that drawback claims are timely liquidated, that claimants are not subject to an extended period where Customs may challenge their claims, and that sureties on drawback claims (who secure accelerated drawback payments on a dollar-for-dollar basis) are not exposed to liabilities for extended periods. *See* S. Rep. 108-28, *supra*.

As written, the statute and implementing regulations are clear, sensible, and well-balanced. Customs is given one year to liquidate a drawback claim, or to allow the claim to be "deemed liquidated," as filed. Customs need track only the filing date of a drawback claim (instead of the liquidation status of thousands of import

entries which may designated therein) to know whether it needs to extend the drawback claim liquidation period. An importer wishing to have its claim liquidated by operation of law on the basis of estimated duty payments, either before the first anniversary of its claim, or after liquidation has been extended, may do so by invoking the optional procedure set out in 19 U.S.C. § 1504(a)(2)(B). The Customs regulations contain procedures, at 19 C.F.R. § 190.81, to ensure that excess drawback is not paid when (a)(2)(B) procedure is invoked.

By importing the optional, situation-specific requirements of the 19 U.S.C. § 1504(a)(2)(B) procedure into the otherwise clear and unequivocal "one-year limit" set out in § 1504(a)(2)(A), the Trade Court's decision places a wide range of drawback claims out of any limitation on liquidation. This is an absurd and anomalous result which Congress clearly did not intend.

The Trade Court's decision should be vacated, and this case remanded with instructions for Customs to treat Performance Additives' claim as deemed liquidated on the first anniversary of its filing; and directing the Trade Court to order the claimed drawback paid, with interest as provided by law.

## CONCLUSION

For all of the foregoing reasons, Plaintiff-Appellant, Performance Additives, respectfully requests that this Court vacate the opinion and judgment of the CIT, hold that the subject drawback entries liquidated as a matter of law, and remand this action to the CIT for further proceedings consistent with its holding.

Respectfully submitted.

   /s/ John M. Peterson
John M. Peterson
*Counsel of Record*
Patrick B. Klein
NEVILLE PETERSON LLP
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Ave, Ste. 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

*Attorneys for Plaintiff-Appellant*

September 9, 2024

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing Principal Brief of Plaintiff-Appellant Performance Additives, complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules. It was prepared using a proportionally-spaced typeface and includes 6,536 words.


   /s/ John M. Peterson
       John M. Peterson

September 9, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2024, I electronically filed the foregoing Principal Brief of Performance Additives, with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

   /s/ John M. Peterson   
John M. Peterson

September 9, 2024

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| PERFORMANCE ADDITIVES, LLC, | |
| Plaintiff, | |
| v. | Before: Jane A. Restani, Judge |
| UNITED STATES, | |
| Defendant. | Court No. 22-00044 |

## <u>JUDGMENT</u>

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; now therefore, in conformity with said decision it is hereby

ORDERED, ADJUDGED, and DECREED that judgment is awarded to the Plaintiff on its drawback claim, entry BI00003408-1, in the amount asserted by the Plaintiff, with such interest as is required by law; judgment is denied for drawback claim, entry BI00004498-1.


        __/s/ Jane A. Restani__
        Jane A. Restani, Judge

Dated: May 31, 2024
     New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| PERFORMANCE ADDITIVES, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES,<br><br>                    Defendant. | <br><br><br>Before: Jane A. Restani, Judge<br><br>Court No. 22-00044 |

## <u>OPINION AND ORDER</u>

[Granting in part and denying in part Performance Additives, LLC's and the United States' cross-motions for summary judgment regarding denial of drawback claims.]

Dated: May 31, 2024

<u>John M. Peterson</u> and <u>Patrick B. Klein</u>, Neville Peterson, LLP, of New York, NY, argued for plaintiff Performance Additives, LLC.  With them on the brief were <u>John P. Donohue</u> and <u>Richard F. O'Neill</u>.

<u>Alexander J. Vanderweide</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for the defendant.  With him on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Justin R. Miller</u>, Attorney-In-Charge.  Of counsel on the brief was <u>Yelena Slepak</u>, Attorney, Office of the Assistant Chief Counsel for International Trade Litigation, U.S. Customs and Border Protection of New York, NY.

Restani, Judge: Plaintiff Performance Additives, LLC ("Performance") commenced this

action to challenge the United States Customs and Border Protection's ("Customs") denial of

Performance's two claims for duty drawback on entries of polymethyl methacrylate polymer filed

under the substitution of finished petroleum derivatives drawback statute.  19 U.S.C. § 1313(p)

(2018).  Now before the court are Performance's and defendant the United States' ("Government")

cross-motions for summary judgment pursuant to USCIT R. 56.  Pl.'s Mot. for Summ. J., ECF No.

18 (Aug. 31, 2023) ("Pl.'s Mot."); Def.'s Mot. for Summ. J., ECF No. 23 (Nov. 21, 2023) ("Def.'s

Mot."). For the following reasons, Performance's motion is granted in part and denied in part, and the Government's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Performance is an importer of various polymer and plastic chemicals classified under Chapter 39 of the Harmonized Tariff Schedule of the United States ("HTSUS") (Plastics and Articles Thereof). Protest and Entries for 100121101001 at 5–6, ECF No. 7-2 (Mar. 16, 2022) ("Protest for Drawback Claim 1"); Protest and Entries for 100121100962 at 5–6, ECF No. 7-1 (Mar. 16, 2022) ("Protest for Drawback Claim 2"); Compl. at ¶ 9, ECF No. 8 (July 6, 2022) ("Compl."). Performance filed two drawback claims relevant to this case: Entry No. BI00004498-1 ("Drawback Claim 1"), filed on March 10, 2020, and Entry No. BI00003408-1 ("Drawback Claim 2"), filed on March 8, 2016. Protest for Drawback Claim 1 at 24, Protest for Drawback Claim 2 at 20. Performance sought drawback under 19 U.S.C. § 1313(p), whereby Customs will refund up to 99% of duties and fees paid on goods imported into the United States if the importer subsequently exports goods of the same kind or quality. Id. at 25, 29. Pl.'s Mot. at 5. 19 U.S.C. § 1313 refers to these refunds as "drawback" or "substitution drawback." See also Nat'l Ass'n of Manufacturers v. Dep't of Treasury, 10 F.4th 1279, 1282 (Fed. Cir. 2021). Drawback Claim 1 identified forty-eight consumption entries for the claimed recovery of $1,328,589.84. Protest for Drawback Claim 1 at 32; Pl.'s Mot. at 7–8. Drawback Claim 2 identified thirty-one consumption entries of merchandise as the basis for the drawback claim in the amount of $91,291.83. Protests for Drawback Claim 2 at 25, 32; Pl.'s Mot. at 6–7.

Initially, Customs approved both applications for drawback; on July 28, 2020, however, Customs advised Performance that its drawback privileges were suspended, and shortly thereafter,

liquidated[1] Performance's drawback claims at an amount of zero.  Pl.'s Mot. at 4–5; Def.'s Mot. at 2.  Performance protested, claiming that its drawback entries were "liquidated by operation of law"[2] such that Customs' liquidations without benefit of drawback were "invalid."  Protest for Drawback Claim 1 at 1; Protest for Drawback Claim 2 at 1.  Customs stated its reason for denying Plaintiff's protest as: "Drawback claim[s] did not liquidate by operation of law in accordacne [sic] with 19 USC 1504(a)(2)(B); all designated import entries were not liquidated and final within one year of the claim being filed."  Protest for Drawback Claim 1 at 2; Protest for Drawback Claim 2 at 2.  Performance then commenced the instant action.

## JURISDICTION AND STANDARD OF REVIEW

The court has protest denial jurisdiction under 28 U.S.C. § 1581(a) (2018).  Denied protests are subject to de novo review "upon the basis of the record made before the court."  See 28 U.S.C. § 2640(a)(1).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact," and "the movant is entitled to judgment as a matter of law."  USCIT R. 56(a).

## DISCUSSION

### I.      Statutory Framework

Drawback, designed to encourage domestic manufacturing, is the reimbursement of duties paid on goods imported into the United States and then used in the manufacture or production of articles which are subsequently exported.  19 U.S.C. § 1313; 19 C.F.R. § 191.2(i)–(k) (2016); Hartog Foods Int'l, Inc. v. United States, 291 F.3d 789, 793 (Fed. Cir. 2002) (citation omitted).  A

---

[1] "Liquidation" means the final computation or ascertainment of duties on entries for consumption or drawback entries.  19 C.F.R. § 159.1 (2016).  "Liquidation," as used with respect to drawback claims specifically, is the term which describes Customs' final determination concerning whether drawback should be paid, and in what amount.

[2] For purposes of "deemed liquidation," or liquidation by operation of law, an entry is deemed liquidated at the rate asserted by the claimant.  19 U.S.C. § 1504; Detroit Zoological Soc. v. United States, 10 CIT 654, 658, 647 F. Supp. 147, 150 (1986).

drawback claimant who exports said goods is entitled to a refund of up to 99% of the duties paid

on the merchandise upon its importation. 19 U.S.C. § 1313. Detailed and specific provisions for

different types of drawback are made by statute and regulation, as here under 19 U.S.C. § 1313(p)

for substitution of finished petroleum derivatives.[3] There are two relevant sets of entries making

up a drawback claim: (1) the underlying import or consumption entries filed with Customs at the

time of importation; and (2) the drawback entry or claim, filed after importation, which covers one

or more underlying import entries.[4] Drawback is a privilege, not a right, and a claimant seeking

drawback must comply with all regulations the Secretary of the Treasury provides. Aurea Jewelry

Creations, Inc. v. United States, 13 CIT 712, 713, 720 F. Supp. 189, 190 (1989), aff'd, 932 F.2d

943 (Fed. Cir. 1991); Hartog, 291 F.3d at 793. Customs finalizes the payment of drawback through

---

[3] As Performance explains,

> 19 U.S.C. § 1313(p), allows payment of drawback with respect to imported
> petroleum substitutes which are "qualifying products" based upon the exportation,
> within a stated time, of substituted petroleum derivatives. Thus, if X. Corp. imports
> and pays duty on certain "qualifying" petroleum derivatives, and sells or exchanges
> them with Y Corp., and Y Corp. then acquires a good made with the use of a
> qualifying article, or substitutes of such articles, and either exports, or sells the
> goods to a third party for export, the exporter may claim drawback in respect of the
> imported "qualifying articles." See 19 C.F.R. §§ 191.173(c), 174(c)).

Pl.'s Mot. at 11.

[4] "Drawback claim" means the drawback entry and related documents required by regulation
which together constitute the request for drawback payment, whereas "drawback entry" means
the document containing a description of, and other required information concerning, the
exported or destroyed article on which drawback is claimed. 19 C.F.R. § 191.2(j)–(k). Thus, a
drawback entry is one part of a complete drawback claim, although the terms are often used
interchangeably. Where the drawback claim has been completed by filing the entry and other
documents and exportation has been established, Customs' drawback offices determine the
drawback due. For this reason, this opinion will refer to "drawback claims" generally throughout
and will refer to import entries underlying drawback claims as either import or consumption
entries.

the process of the "liquidation" of a drawback claim.  19 C.F.R. §§ 159.1, 191.81 (2016).  Customs'

practice is

> generally to defer the liquidation of drawback claims until either all import entries
> underlying the drawback claim have been liquidated and those liquidations are
> "final" (i.e., the period for filing of any protest or claim against the liquidation of
> the import entries has expired), or the drawback claimant has filed a waiver with a
> deposit of any additional duties owed on the imported merchandise.

Ford Motor Company v. United States, 44 F. Supp. 3d 1330, 1335 (CIT 2015) (citing 19 C.F.R. §

191.81(a)(1), (2)).  There are, then, two ways drawback claims are paid out: either based on the

final liquidation of the designated import entries; or, based on a deposit of estimated duties before

liquidation of the designated import entries.  19 C.F.R. § 190.81(a)–(d) ("Drawback will be based

on the final liquidated duties paid that have been made final by operation of law (except in the case

of the written request for payment of drawback on the basis of estimated duties, voluntary tender

of duties, and other payments of duty, and waiver, provided for in paragraphs (b) and (c) of this

section).").

Drawback may be based on estimated duties if the import entry has not been liquidated, or

the liquidation has not become final (for various reasons, including a protest being filed, statutory

suspension, or court order), and the drawback claimant and any other party responsible for the

payment of duties each files a written request for payment of drawback, waiving any right to

payment or refund under other provisions of law.  19 U.S.C. 1504(a)(2)(B); 19 C.F.R. § 190.81(b).

The regulation provides that the drawback claim may not be adjusted thereafter by reason of a

subsequent liquidation of any import entry.  Id.  But, it also provides that if final liquidation of the

import entry discloses that the total amount of duty is different from the estimated duties, the party

responsible for the payment of liquidated duties shall be liable for one percent of all increased

duties or shall be entitled to a refund of one percent of all excess duties.  Id.

There are, however, limitations on the liquidation of drawback claims and their underlying import entries. See 19 U.S.C. § 1504 (establishing a statutory time frame for the liquidation of consumption entries and drawback claims). The intent of these limitations is to relieve importers of prolonged uncertainty by requiring that duty liabilities be ascertained and fixed generally within one year. See Ambassador Div. of Florsheim Shoe v. United States, 748 F.2d 1560, 1565 (Fed. Cir. 1984). To this end, 19 U.S.C. § 1504 provides for "deemed liquidation" by operation of law where Customs fails to liquidate in a timely fashion. See Ford, 44 F. Supp. 3d at 1353; Koyo Corp. v. United States, 497 F.3d 1231, 1239–40 (Fed. Cir. 2007) (noting that "Congress enacted the deemed liquidation statute to prevent Customs from belatedly assessing additional duties and from indefinitely retaining duties deposited in excess"); S. Rep. No. 95-778, at 4 (1978). As the legislative history explains specifically as to the later inclusion of drawback claims,

> [i]f drawback claims are never liquidated, for an open-ended time period the drawback claimant's claim unfairly remains subject to challenge by [] Customs. This creates an unwarranted liability and the possibility that the claimant will have to reimburse the U.S. Treasury any drawback monies paid to the claimant–even several years from when the claim was actually made and money was paid to the drawback claimant.

S. Rep. No. 108-28, at 172–73 (2003). The limitations on drawback liquidation pertinent to this case are cited in full:

### § 1504. Limitation on liquidation

**(a) Liquidation**

. . . .

**(2) Entries or claims for drawback**

**(A) In general**

Except as provided in subparagraph (B) or (C), unless an entry or claim for drawback is extended under subsection (b) or suspended as required by statute or court order, an entry or claim for drawback

not liquidated within 1 year from the date of entry or claim shall be deemed liquidated at the drawback amount asserted by the claimant or claim. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

**(B) Unliquidated imports**

An entry or claim for drawback whose designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A), or within the 1-year period described in subparagraph (C), shall be deemed liquidated upon the deposit of estimated duties on the unliquidated imported merchandise, and upon the filing with the Customs Service of a written request for the liquidation of the drawback entry or claim. Such a request must include a waiver of any right to payment or refund under other provisions of law. The Secretary of the Treasury shall prescribe any necessary regulations for the purpose of administering this subparagraph.

. . . .

**(b) Extension**

The Secretary of the Treasury may extend the period in which to liquidate an entry if--

(1) the information needed for the proper appraisement or classification of the imported or withdrawn merchandise, or for determining the correct drawback amount, or for ensuring compliance with applicable law, is not available to the Customs Service; or

(2) the importer of record or drawback claimant, as the case may be, requests such extension and shows good cause therefor.

The Secretary shall give notice of an extension under this subsection to the importer of record or drawback claimant, as the case may be, and the surety of such importer of record or drawback claimant. Notice shall be in such form and manner (which may include electronic transmittal) as the Secretary shall by regulation prescribe. Any entry the liquidation of which is extended under this subsection shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record, or the drawback amount asserted by the drawback claimant, at the expiration of 4 years from the applicable date specified in subsection (a).

19 U.S.C. § 1504.[5] For brevity's sake, the relevant subsections may be categorized as follows: 19 U.S.C. § 1504(a)(2) is the deemed liquidation provision governing drawback claims, within which 19 U.S.C. § 1504(a)(2)(A) governs the liquidation of drawback claims in general unless an exception overrides, and 19 U.S.C. § 1504(a)(2)(B) governs the liquidation of drawback claims whose import entries have not "been liquidated and become final" within the one-year period described in subparagraph (A).[6] Put another way, Congress designated subparagraph (B) as an exception to the general one-year deemed liquidation rule of subparagraph (A). See Ford, 44 F. Supp. 3d at 1351. Subparagraph (B) allows a claimant to force liquidation of a drawback claim if its enumerated conditions are met. 19 U.S.C. § 1504(b) governs extensions of liquidation.

Under 19 U.S.C. § 1504(a)(2), Customs generally has one year within which to liquidate drawback claims. If Customs fails to liquidate the drawback claims during that one-year period, and no specified exception applies, the drawback claims liquidate by force of law, that is, they are deemed liquidated. Drawback claims that are deemed liquidated are assessed at the duty rate asserted by the drawback claimant. 19 C.F.R. § 190.81(e)(2).[7] Before the one-year time period elapses, however, Customs may extend the time in which it may liquidate a drawback claim. Customs may extend the time period for liquidating a drawback claim up to three years, resulting

---

[5] Subparagraph 19 U.S.C. § 1504(a)(2)(C) is an inapplicable transition provision. 19 U.S.C. § 1504(a)(1) is the deemed liquidation provision governing consumption entries and provides generally that an entry of merchandise for consumption not liquidated within one year from the date of entry shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted by the importer of record.

[6] Unless extended under subsection (b), the one-year period described in subparagraph (A) is one year from the date the drawback claim was filed. See 19 U.S.C. § 1504(a)(2)(A).

[7] Customs will authorize the amount of the refund due as drawback to the claimant and issue payment no later than 90 days after liquidation. 19 U.S.C. § 1504(a)(3); 19 C.F.R. § 190.81(e)(2).

in a total of four potential years before the claim will liquidate by operation of law. 19 U.S.C. § 1504(b); 19 C.F.R. § 159.12 (2016).

The question before the court here is which subparagraph, or subparagraphs, of 19 U.S.C. § 1504 governs Performance's two drawback claims. Depending upon which subparagraph applies, Performance's drawback claims were either liquidated by operation of law, or not— ultimately deciding whether Performance receives the drawback amount it asserted as the drawback claimant.

## II.    Discussion

Performance argues that its drawback claims were deemed liquidated. Per the plain language of subparagraph (A), Performance argues, Customs failed to liquidate Drawback Claim 1 within one year of its filing. Pl.'s Mot. at 8–9. Thus, Drawback Claim 1 was deemed liquidated on the one-year anniversary of its filing at the amount asserted by Performance. Id. Similar to Drawback Claim 1, Performance asserts Drawback Claim 2 was also deemed liquidated per subparagraph (A), the only difference being that Drawback Claim 2 was extended by Customs. Compl. at ¶¶ 23, 26, 31. Customs' extension of Drawback Claim 2, under subsection (b), created a new deadline by which Customs must liquidate the drawback claim under subparagraph (A). Id. When Customs failed to liquidate, Performance argues, Drawback Claim 2 was also deemed liquidated. Id. Performance argues that because both of its drawback claims were already deemed liquidated at the amounts it asserted, Customs' purported liquidations of its drawback claims after the deemed liquidation dates at an amount of zero were void. Pl.'s Mot. at 3.

Further, Performance argues that because all of the designated entries underlying its drawback claims had liquidated before the one-year anniversary of the filing, the exception under subparagraph (B) does not apply to either Drawback Claim 1 or Drawback Claim 2. See Pl.'s Mot.

at 16–17.  Performance states it "did not avail itself of the procedure set out in 19 U.S.C. § 1504(a)(2)(B), and indeed was ineligible to do so, as all of the import entries designated in its claims had liquidated within one year of the filing of the claim."  Resp. of Pl. Performance Additives LLC to Ct.'s Questions for Oral Arg. at 13, ECF No. 36 (Apr. 16, 2024) ("Pl.'s OA Resp.").  Because the subparagraph (B) exception, along with any other exception, does not apply to its drawback claims, Performance argues, the "conditions for 'deemed liquidation' of Plaintiff's drawback claim[s] are met in this case."  Pl.'s Mot. at 17–18, 21.

The Government argues that Performance's drawback claims were not deemed liquidated and that Customs' liquidations of Drawback Claims 1 and 2 were therefore valid.  According to the Government, "a deemed liquidation of a drawback claim under subparagraph (A) only occurs when all of the designated import entries are liquidated and final by the end of the statutory one-year period, as measured from the date that the drawback claim is filed."  Def.'s Mot. at 3.  The Government argues liquidation of a drawback claim becomes final 180 days after liquidation unless a protest is filed.  Id. at 8 (citing 19 U.S.C. § 1514(a), (c)).  Because all of the designated import entries underlying Performance's drawback claims were not liquidated and final (i.e., 180 days after the liquidations), the Government claims, Performance's drawback claims were not deemed liquidated.  Id. at 3, 8–9.

Additionally, the Government contends, and Plaintiff concedes, Performance did not follow the procedure under the subparagraph (B) exception to force Customs to liquidate its drawback claims.  Therefore, the time limits imposed by the drawback statute do not apply to Drawback Claims 1 and 2.  Id. at 3.  The Government claims that because Customs was under no time restraint to liquidate Performance's drawback claims, its liquidation of Drawback Claims 1 and 2 outside of the alleged deemed liquidation dates was valid.  Id. at 17.

Performance's respective claims are addressed separately.

### a. Drawback Claim 1 (Entry No. BI00004498-1)[8]

Drawback Claim 1 was filed on March 10, 2020.  Protest for Drawback Claim 1 at 1.

Drawback Claim 1 designated forty-eight import entries, the last of which was liquidated on

November 27, 2020.  See Pl.'s Rule 56.3 Statement of Material Facts Not in Dispute at ¶ 13, ECF

No. 18-1 (Aug. 31, 2023) ("Pl.'s Statement"); Def.'s Resp. to Pl.'s Rule 56.3 Statement of Material

Facts Not in Dispute at ¶ 13, ECF No. 23-2 (Nov. 21, 2023) ("Def.'s Statement").  Customs did

not reliquidate any of the consumption entries or extend liquidation, and no protests were filed.

Pl.'s Statement at ¶¶ 15–17; Def.'s Statement at ¶¶ 15–17.

Performance argues, because all of the underlying consumption entries were liquidated

within one year of the claim, Drawback Claim 1 was deemed liquidated at the one-year anniversary

of the filing of the drawback claim, with allowance of drawback in the amount of $1,328,589.84.

Compl. at ¶¶ 34–37; Pl.'s Mot. at 8.  According to Performance, because all underlying

consumption entries were liquidated by that time, and no exceptions in 19 U.S.C. § 1504 apply, its

drawback claim was deemed liquidated by operation of 19 U.S.C. § 1504(a)(2)(A).  Pl.'s Mot. at

8, 18–21.  Customs' purported liquidation of Drawback Claim 1 approximately one month after

the alleged deemed liquidation date, Performance argues, was therefore untimely and void.  See

Compl. at ¶¶ 37–38.

The Government disagrees, asserting that because all of the designated import entries

underlying Drawback Claim 1 were not liquidated and final, Drawback Claim 1 was not deemed

liquidated under 19 U.S.C. § 1504(a)(2)(A).  Def.'s Mot. at 3.  Instead, Drawback Claim 1 "was

---

[8] Unlike the briefing in this case, the court refers to the later in time but significantly larger claim as Drawback Claim 1.

only ever potentially subject to subsection (B)," a clear exception to subparagraph (A). Def.'s Resp. to the Ct.'s Questions at 3, ECF No. 35 (Apr. 16, 2024) ("Def.'s OA Resp."); Def.'s Reply to Pl.'s Resp. to Def.'s Cross-Mot. For Summ. J. at 2, ECF No. 27 (Jan. 19, 2024) ("Def.'s Reply"). Because Performance did not follow the steps outlined in 19 U.S.C. § 1504(a)(2)(B) to force liquidation of its drawback claim, including depositing estimated duties and filing a written request for liquidation with Customs, Drawback Claim 1 was not deemed liquidated. Id. As a result, the Government concludes, Customs' liquidation of Drawback Claim 1 on April 30, 2021, at the drawback amount of zero was valid. Def.'s Mot. at 17.

As cited above, 19 U.S.C. § 1504(a)(2)(A) deems liquidated drawback claims that have not been liquidated within one year of their filing. This is the general provision for the liquidation of drawback claims that applies save the following exceptions: where the underlying import entries have not been liquidated and become final within the one-year period described in subparagraph (A); or, where a drawback claim has been extended under subsection (b).[9] 19 U.S.C. § 1504(a)(2)(A)–(B), (b).

Parties agree that Drawback Claim 1 was not extended by Customs and therefore subsection (b) does not apply.[10] Def.'s Mot. at 2 n.1; Pl.'s Mot. at 7. Thus, the only exception under the liquidation statute that could possibly apply to Drawback Claim 1 is subparagraph (B). Otherwise, subparagraph (A) applies.

By its terms subparagraph (B) is available where a drawback claim's designated import entries have not been liquidated and become final within one year of the filing of the drawback

---

[9] As mentioned above, 19 U.S.C. § 1504(a)(2)(C) lists another exception that does not apply here. See supra note 5. A drawback claim may also be suspended as required by statute or court order, a scenario that also does not apply.

[10] As Drawback Claim 1 was not extended, the one-year period described in subparagraph (A) was one year from the filing of the drawback claim, i.e., March 10, 2021.

claim.  In this scenario, subparagraph (B) provides a mechanism by which a claimant may prompt (or "force") Customs to liquidate its drawback claim before its designated import entries, if a claimant places a deposit and files a written request.  19 C.F.R. § 190.81(b); see supra pp. 4–5.  As indicated, Plaintiff concedes it does not qualify under this provision.  Pl.'s OA Resp. at 13.  But that is not the only import of subparagraph (B).  It is true that Drawback Claim 1's underlying consumption entries had liquidated within one year of the filing of the drawback claim.  Yet, as the Government argues, subparagraph (B) makes clear that drawback claims whose import entries have not been liquidated and become final within one year of the filing of the drawback claim are excepted from the general deemed liquidated drawback provision.  "Final" is not defined anywhere in the deemed liquidation statute.  See 19 U.S.C. § 1504.  19 U.S.C. § 1514, however, provides the answer.

Generally, liquidation of an entry, including a drawback entry, is final and conclusive upon all persons unless a protest is filed.  19 U.S.C. § 1514(a), (c).  It is the liquidation which is final and subject to protest, not the preliminary findings or decisions of Customs officers.  See Commonwealth Oil Ref. Co. v. United States, 332 F. Supp. 203 (Cust. Ct. 1971).  A protest challenging liquidation may be filed with Customs within 180 days after but not before the date of liquidation.  19 U.S.C. § 1514(c)(3)(A); Ford, 44 F. Supp. 3d at 1335 (characterizing finality as when the period for filing any protest or claim against the liquidation of an entry has expired).  The Government argues that Drawback Claim 1's import entries had not become final because the protest period had not yet ended.  That is, with the 180-day protest period accounted for, Drawback Claim 1's import entries may have been liquidated but had not yet become final within one year of the filing of the drawback claim.  Def.'s Reply at 2.  Thus, according to the Government, subparagraph (B) is the only avenue that was open to Plaintiff to obtain a deemed liquidation in

advance of finality of the underlying consumption entries.  Id. at 6.  Because it is undisputed that

Performance did not follow the procedure outlined in subparagraph (B) to force liquidation of its

drawback claim, Government argues, Plaintiff is not entitled to drawback.  Id.

The court agrees with the Government.  Subparagraph (B), as an exception to subparagraph

(A), clearly outlines the procedure a claimant must follow to liquidate its drawback claim when its

designated import entries have not been liquidated and become final within one year.  The import

entries underlying Drawback Claim 1 had been liquidated but had not yet become final within one

year of the filing of the drawback claim because the protest period had not yet ended.  19 U.S.C.

§ 1514 dictates that liquidations of import and drawback entries are final unless a protest is filed.

All concerned parties may only know and rely on the fact that a liquidation is final once the period

to protest has ended.[11]

 Congress could have made the statute clearer by limiting subparagraph (A) to those

drawback claims with finally liquidated consumption entries, but by expressly making the

exception to subparagraph (A) found in subparagraph (B) specific to non-final claims, Congress

made clear the import of subparagraph (A).  Under subparagraph (A), interpreted in the context of

the whole statute, "an entry or claim for drawback" (absent an extension or suspension, not

applicable here) either deems liquidated on the first anniversary of the filing of the claim, or it

doesn't.  The question of whether the drawback claim was deemed liquidated or was not deemed

liquidated must be ascertainable at that time, i.e., on the one-year anniversary, not some time in

the future.  Drawback claims are deemed liquidated automatically if all underlying consumption

---

[11] Otherwise, parties are presented with a Schrodinger's cat situation—it would be impossible to
know whether a liquidation is final or not during the protest period.  Indeed, the very purpose of
limitations on liquidation is to "increase certainty in the customs process for importers, surety
companies, and other third parties with a potential liability relating to a customs transaction."  S.
Rep. No. 95-778, at 32 (1978), reprinted in 1978 U.S.C.C.A.N. 2211, 2243.

entries are liquidated and final within one year of the drawback claim and liquidation of the drawback claim does not occur by that time.[12]  This makes sense because Customs knows what drawback is owed on the consumption entries only when they are final, and further, if Customs is running out of time to liquidate the drawback claim because the liquidation of the underlying consumption entries is not final, it can extend the deadline under subsection (b).

Any application of subparagraph (A) that ignores the status of the underlying consumption entries renders the safeguards of subparagraph (B) a nullity.  Even Plaintiff seems to acknowledge this by asserting the underlying consumption entries were liquidated, if not final.

Because the import entries underlying Drawback Claim 1 had not been liquidated and become final within one year of the filing of the drawback claim, subparagraph (A) did not apply.  As Performance failed to comply with the statutory requirements of subparagraph (B), it is not entitled to the deemed liquidation rate it asserted as the drawback claimant under Drawback Claim 1.

### b.  Drawback Claim 2 (Entry No. BI00003408-1)

In its briefing, Performance argues that Drawback Claim 2 liquidated by operation of law per 19 U.S.C. § 1504(a)(2)(A) and its extension subsection, 19 U.S.C. § 1504(b).  Pl.'s Mot. at 17–18; Pl.'s Resp. to Def.'s Cross-Mot. for Summ. J. at 12–13, ECF No. 24 (Dec. 26, 2023) ("Pl.'s Resp.").  Performance asserts Drawback Claim 2 was filed on March 8, 2016, and liquidation was extended once by Customs.  Pl.'s Resp. at 12.  Absent any further extensions, Performance argues,

---

[12] That is, the availability of the elective subparagraph (B) procedure cannot arise until after the close of the one-year period following filing of the claim: the statute makes it available only if there is an underlying consumption entry with a liquidation that did not "become final within the 1-year period described in subparagraph (A) . . . ."  19 U.S.C. § 1504(a)(2)(B).  And if that procedure is still available on the one-year anniversary of the filing of the drawback claim, the deemed liquidation described in subparagraph (A) does not occur.

Drawback Claim 2 liquidated by operation of law on March 8, 2018, the extended deemed liquidation date, according to Plaintiff.  Pl.'s Mot. at 17–18.  Further, even if Customs extended Drawback Claim 2 to the fullest extent of four years allowed under 19 U.S.C. § 1504(b), Customs' purported liquidation five years later, on May 14, 2021, is asserted to still be "untimely and void." Id.; Pl.'s Resp. at 12–13.

The Government disagrees with Performance's categorization of Drawback Claim 2 as deemed liquidated under 19 U.S.C. § 1504(a)(2)(A).  According to the Government, similar to its arguments as to Drawback Claim 1, subparagraph (A) governs potential deemed liquidations only if subparagraph (B) is not available to Plaintiff.  Def.'s Mot. at 11–12.  Here, because all of the import entries underlying Drawback Claim 2 had not been liquidated and become final within one year of the filing of the drawback claim, any subsequent extension after the one-year period was a nullity, and early liquidation of Drawback Claim 2 could only be preserved under subparagraph (B).  Def.'s Mot. at 11, 18; Def.'s Reply at 2–6 (citing 19 U.S.C. § 1504(a)(2)(B) ("An entry or claim for drawback whose designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A) . . . shall be deemed liquidated [according to the procedures set forth therein]. . . .")).  Because Performance did not follow the procedures outlined in subparagraph (B) to liquidate its drawback claim, the Government argues, Customs was under no time limit to liquidate Drawback Claim 2, regardless of any extensions of the time to liquidate.  Def.'s Reply at 6; see also Def.'s OA Resp. at 3.  As a result, the Government claims, Customs' May 14, 2021, liquidation was valid.  The problem is the Government's interpretation of the statute, which the court has upheld, yields a different result under the actual facts of Drawback Claim 2.

In advance of oral argument, the Government claimed for the first time that Drawback Claim 2 was extended on December 1, 2017, after the liquidation deadline of March 8, 2017, had already passed. See Def.'s OA Resp. at 1. The Government argued that the one-year period of section 1504(a)(2)(A) had elapsed without the designated import entries becoming final and thus the out of time extension was a nullity. Id. at 1–3. The court held oral argument, and afterwards ordered the Government to provide evidence to corroborate its assertion that the liquidation deadline for Drawback Claim 2 was extended only on December 1, 2017, which was crucial to its theory. Paperless Order, ECF No. 38 (Apr. 19, 2024). In its response, the Government submitted evidence showing Drawback Claim 2 was extended twice, once on November 26, 2016, and again on December 1, 2017. Def.'s Resp. to the Ct.'s Order, ECF No. 39 (Apr. 26, 2024).[13] In other words, there was no gap in the time period covered by the extensions. The Government submitted no new argument addressing the new information on the extensions.

As stated, Drawback Claim 2 was originally filed on March 8, 2016. Protest for Drawback Claim 2 at 1; Pl.'s Mot. at 17; Def.'s Mot. at 1. The thirty-one import entries underlying Drawback Claim 2 were liquidated between July 8, 2016, and December 30, 2016. Pl.'s Statement at ¶ 5; Def.'s Statement at ¶ 5. In the light of the undisputed evidence submitted post-oral argument, the court finds Drawback Claim 2 was extended by Customs on November 26, 2016, making a new deadline to avoid deemed liquidation March 8, 2018, and again on December 1, 2017, making the last deadline to avoid deemed liquidation March 8, 2019. See 19 U.S.C. § 1504(a)(2)(A), (b); 19

---

[13] The discrepancy in extension dates was likely due to Customs' migration from its former recordkeeping system, Automated Commercial System ("ACS"), to its current one, Automated Commercial Environment ("ACE"). Resp. to Court's Order at 1–2. As of February 24, 2019, all drawback claimants must file drawback claims through ACE. See Drawback in ACE, U.S. Customs and Border Protection (Oct. 6, 2022), https://www.cbp.gov/trade/automated/news/drawback (last visited May 1, 2024).

C.F.R. § 159.12. Adding 180 days to the last date of liquidation of the designated import entries, it is clear that all of the import entries underlying Drawback Claim 2 had become final well before the last extended date for liquidation.[14] This new deadline of March 8, 2019, for liquidation of the drawback claim came to pass without any further action by Customs, and as a result, Drawback Claim 2 was deemed liquidated on this date at the drawback amount asserted by Performance. As explained previously, under subsection (b) Customs may extend the time in which it may liquidate a drawback claim. Once Customs does so, it is subject to the new deemed liquidation deadline it creates and each extended deadline thereafter. No other meaning of subsection (b) is asserted or would make sense. Here, the deadline for liquidation of Drawback Claim 2 was validly extended twice before the claim was deemed liquidated under subparagraph (A). In essence, the one-year period of section 1504(a)(2)(A) became a three-year period by operation of the extension provision of section 1504(b). Customs had three years to liquidate Drawback Claim 2. When Customs failed to do so, Drawback Claim 2 was deemed liquidated, and Customs' purported liquidation on May 14, 2021, was therefore invalid. Accordingly, Performance is entitled to the deemed liquidated drawback amount of $91,291.83 it asserts for Drawback Claim 2.

## CONCLUSION

For the foregoing reasons, Performance's cross-motion for summary judgment, ECF No. 18, is granted as to Drawback Claim 2 and denied as to Drawback Claim 1. Correspondingly, the

---

[14] As discussed previously, subparagraph (B) is an exception to subparagraph (A) that is available when the underlying import entries have not been liquidated and become final within the one-year period as described in subparagraph (A). 19 U.S.C. § 1504(a)(2)(A)–(B). Here, the one-year period described in subparagraph (A) had been extended twice, to end on March 8, 2019. As of this date, all underlying import entries were liquidated and final. Accordingly, subparagraph (B) can not apply to Drawback Claim 2.

Government's cross-motion for summary judgment, ECF No. 23, is denied as to Drawback Claim

2 and granted as to Drawback Claim 1.  Judgment will enter accordingly.

                                                       /s/Jane A. Restani
                                                      Jane A. Restani, Judge

Dated: May 31, 2024
       New York, New York