# United States Court of Appeals
# For The Federal Circuit

◀ ►

PERFORMANCE ADDITIVES, LLC,

*Plaintiff-Appellant,*

—v.—

UNITED STATES,

*Defendant-Appellee.*

Appeal from the United States Court of International Trade
in Case No. 22-00044, Judge Jane A. Restani

## DEFENDANT-APPELLEE'S BRIEF

Brian M. Boynton
Principal Deputy Assistant
Attorney General

Patricia M. McCarthy
Director

Justin R. Miller
Attorney-In-Charge
International Trade Field Office

Alexander Vanderweide
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. No. (212) 264-0482 or 9230

*Attorneys for Defendant-Appellee*

*Of Counsel*:

Yelena Slepak
Deputy Assistant Chief Counsel
Alexandra Khrebtukova
Senior Attorney
Office of Assistant Chief Counsel
U.S. Customs and Border Protection
New York, New York

Dated: November 22, 2024

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

STATEMENT OF THE ISSUE .................................................................. 2

STATEMENT OF THE CASE ................................................................... 2

    A. Statutory and Regulatory Background ................................................ 2

    B. Factual Background ............................................................................ 8

    C. Prior Proceedings ............................................................................. 8

SUMMARY OF ARGUMENT ............................................................... 10

ARGUMENT ........................................................................................... 12

    I.     Standard of Review ......................................................................... 12

    II.    The Subject Drawback Claim Did Not Deem Liquidate Under
          19 U.S.C. § 1504(a)(2)(A) or (B) ..................................................... 12

      A. Subparagraphs (A) and (B) Must Be Construed Together ............... 17

      B. Performance's Drawback Claim Was Eligible For Deemed
         Liquidation Under Subparagraph (B), But Performance Did Not
         Trigger The Provision ...................................................................... 22

      C. Drawback Claims That Are Ineligible For Deemed Liquidation
         Under Subparagraph (A), or For Which Deem Liquidation Is Not
         Invoked Under Subparagraph (B), Do Not Run Counter To
         Congressional Intent ........................................................................ 28

CONCLUSION ........................................................................................ 32

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. United States,*
573 F.3d 1327 (Fed. Cir. 2009) ................................................... 11

*Bailey v. United States,*
516 U.S. 137 (1995) ..................................................................... 19

*Barnhart v. Sigmon Coal Co.,*
534 U.S. 438 (2002) ..................................................................... 31

*BP America Production Co. v. Burton,*
549 U.S. 84 (2006) ....................................................................... 12

*Candle Corp. of Am. v. United States,*
374 F.3d 1087 (Fed. Cir. 2004) ................................................... 18

*Facebook, Inc. v. Windy City Innovations, LLC,*
953 F.3d 1313 (Fed. Cir. 2020) ................................................... 11

*Ford Motor Company v. United States,*
44 F. Supp. 3d 1330 (Ct. Int'l Trade 2015) ............................. 5, 13

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
530 U.S. 1 (2000) ............................................................. 12-13, 26

*Hibbs v. Winn,*
542 U.S. 88 (2004) ....................................................................... 19

*Lexecon Inc. v. Milberg Weis Bershad Hynes & Lerach,*
523 U.S. 26 (1998) ....................................................................... 17

*Regions Hospital v. Shalala,*
522 U.S. 448 (1998) ..................................................................... 17

*Sebelius v. Cloer,*
569 U.S. 369 (2013) ..................................................................... 12

*Welch v. United States,*
578 U.S. 120 (2016) ..................................................................... 19

**Statutes**

19 U.S.C. § 1313 ........................................................................................ 1

19 U.S.C. § 1313(p) .................................................................................. 2

19 U.S.C. § 1500 ........................................................................................ 3

19 U.S.C. § 1504(a)(1) .....................................................................5, 11, 29

19 U.S.C. § 1504(a)(1)(A)-(E) .............................................................. 29

19 U.S.C. § 1504(a)(2) ......................................................................... *passim*

19 U.S.C. § 1504(a)(2)(A) .................................................................... *passim*

19 U.S.C. § 1504(a)(2)(B) .................................................................... *passim*

19 U.S.C. § 1504(a)(2)(C) ........................................................................ 7

19 U.S.C. § 1504(b) ............................................................................... 25

19 U.S.C. § 1505(a) ...........................................................................3, 24

19 U.S.C. § 1514 ..................................................................................... 14

19 U.S.C. § 1514(a) .......................................................................3, 8, 14

19 U.S.C. § 1514(c) ................................................................................... 3

19 U.S.C. § 1514(c)(3) ........................................................................... 14

19 U.S.C. § 1514(c)(3)(A) ........................................................................ 4

19 U.S.C. § 1515(a) ............................................................................... 20

**Regulations**

19 C.F.R. § 159.1 ...............................................................................3, 5

19 C.F.R. § 190.2 ..................................................................................... 2

19 C.F.R. § 190.81(a), (e) ...................................................................... 5

19 C.F.R. § 190.81(a)-(b) ....................................................................... 5

19 C.F.R. § 190.81(b) ............................................................... 15, 22, 26

19 C.F.R. § 190.92 ............................................................................ 22

**Other Authorities**

2A N. Singer, Statutes and Statutory Construction (rev. 6th ed. 2000)
§ 46.06, pp. 181-186 ...........................................................................19

Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF
LEGAL TEXTS at 167 (2012) ..............................................................17

S. Rep. 108-28 at 172-73 (2003) ....................................................... 31

## STATEMENT PURSUANT TO RULE 47.5

In accordance with Rule 47.5 of the Rules of the United States Court of Appeals for the Federal Circuit, counsel for defendant-appellee makes the following statements:

(1) No other appeal in or from the same civil action or proceeding in the United States Court of International Trade was previously before this or any other appellate court.

(2) The following action, currently pending in the United States Court of International Trade, may be directly affected pending the Court's decision in this appeal: *Performance Additives, LLC v. United States*, Court Int'l Trade No. 22-00086.

2024-2059

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

PERFORMANCE ADDITIVES, LLC,
*Plaintiff-Appellant*

v.

UNITED STATES,
*Defendant-Appellee*

_____

Appeal from the United States Court of International Trade
in case no. 22-00044, Judge Jane A. Restani

_____

## BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES

## INTRODUCTION

This case concerns a privilege known as "drawback."  Drawback is the payment by U.S. Customs and Border Protection (CBP) to a qualifying claimant of up to 99% of the taxes, duties, and fees paid on imported goods when the same or substitute goods are exported or are used in the manufacture of products that are exported, or when certain other specified conditions are met.  *See generally* 19 U.S.C. § 1313.  Drawback encourages domestic manufacturing and promotes fair competition with overseas competitors by alleviating the financial burdens of entities that import and export goods.

## STATEMENT OF THE ISSUE

CBP liquidated the subject drawback claim, which covered import entries of "polymethyl methacrylate polymer," at zero drawback. Appx2. Performance Additives, LLC (Performance) argues that its drawback claim was deemed liquidated by operation of 19 U.S.C. § 1504(a)(2)(A) at the amounts asserted in the claim. The issue in this case is whether the United States Court of International Trade correctly determined that the drawback claim was validly liquidated by CBP and was not deemed liquidated by operation of law.

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

Performance's drawback claim was made pursuant to 19 U.S.C. § 1313(p), which permits eligible claimants to receive as drawback up to 99% of the duties, taxes and fees paid on certain imported petroleum products if qualifying substitute finished petroleum derivative merchandise is exported and the applicable statutory and regulatory conditions are otherwise met. As relevant here, "{d}rawback, as authorized for payment by CBP, means the refund, in whole or in part, of the duties, taxes, and/or fees paid on imported merchandise, which were imposed under Federal law upon entry or importation." 19 C.F.R. § 190.2 (definitions at "Drawback").

"There are two relevant sets of entries making up a drawback claim: (1) the underlying import or consumption entries filed with Customs at the time of

2

importation; and (2) the drawback entry or claim, filed after importation, which covers one or more underlying import entries." Appx5.

With respect to import or consumption entries, upon filing the underlying import entry paperwork, estimated duties are required to be deposited on the entry, 19 U.S.C. § 1505(a), which CBP then liquidates, *i.e.*, fixes the duty rate and amount to be assessed on the entry. 19 U.S.C. § 1500; 19 C.F.R. § 159.1. Generally, the liquidation of an import entry becomes final and conclusive 180 days after the date that it liquidates, unless a protest is filed to challenge that liquidation (or some other protestable decision that CBP rendered on the entry). 19 U.S.C. § 1514(a), (c). Section 1514(a) states as follows:

> (a) Finality of decisions; return of papers
>
> Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), section 1520 of this title (relating to refunds), and section 6501 of Title 26 (but only with respect to taxes imposed under chapters 51 and 52 of such title), any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to—
>
> (1) the appraised value of merchandise;
>
> (2) the classification and rate and amount of duties chargeable;

3

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

(5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 of this title or section 1504 of this title;

(6) the refusal to pay a claim for drawback; or

(7) the refusal to reliquidate an entry under subsection (d) of section 1520 of this title;

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of Title 28 within the time prescribed by section 2636 of that title. When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.

Relevant here, 19 U.S.C. § 1514(c)(3)(A) provides: "A protest of a decision, order, or finding described in subsection (a) shall be filed with the Customs Service within 180 days after but not before—(A) date of liquidation or reliquidation…"

After all designated import entries have liquidated and become final, CBP determines whether the drawback claim qualifies for the payment of drawback and liquidates the claim, *i.e.*, finalizes payment of any drawback.  19 C.F.R. § 159.1; 19 C.F.R. § 190.81(a), (e).  CBP may also liquidate a drawback claim after estimated duties have been deposited but before the designated import entries have liquidated so long as the drawback claimant and importer responsible for the payment of duties each files a written request and waiver of any right to payment or refund under other provisions of law.  19 C.F.R. § 190.81(a)-(b).  *See also Ford Motor Company v. United States*, 44 F. Supp. 3d 1330, 1335 (Ct. Int'l Trade 2015).  "There are, then, two ways drawback claims are paid out: either based on the final liquidation of the designated import entries; or, based on a deposit of estimated duties before liquidation of the designated import entries. 19 C.F.R. § 190.81 (a)—(d)."  Appx6.

Should CBP not liquidate an import entry or drawback claim, 19 U.S.C. § 1504 specifies the statutory time frames and conditions for consumption entries and drawback claims to deem liquidate or be eligible for deemed liquidation by operation of law.  The limitations on the liquidation of consumptions entries is set forth under 19 U.S.C. § 1504(a)(1), which provides:

> (1)  Entries for consumption
>
> Unless an entry of merchandise for consumption is extended under subsection (b) of this section or suspended as required by statute or court order, except as provided in

section 1675(a)(3) of this title, an entry of merchandise for consumption not liquidated within 1 year from—

(A) the date of entry of such merchandise,

(B) the date of the final withdrawal of all such merchandise covered by a warehouse entry,

(C) the date of withdrawal from warehouse of such merchandise for consumption if, pursuant to regulations issued under section 1505(a) of this title, duties may be deposited after the filing of any entry or withdrawal from warehouse,

(D) if a reconciliation is filed, or should have been filed, the date of the filing under section 1484 of this title or the date the reconciliation should have been filed, whichever is earlier; or

(E) if a reconfigured entry is filed under an import activity summary statement, the date the import activity summary statement is filed or should have been filed, whichever is earlier;

shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted by the importer of record. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

In contrast, the limitations on the liquidation of drawback claims is set forth under 19 U.S.C. § 1504(a)(2), which provides:

(2) Entries or claims for drawback

(A) In general

Except as provided in subparagraph (B) or (C), unless an entry or claim for drawback is extended under subsection (b) or suspended as required by statute or court order, an entry or claim for drawback not liquidated within 1 year from the date of entry or claim shall be deemed liquidated at the drawback amount asserted by the claimant or claim. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

(B) Unliquidated imports

An entry or claim for drawback whose designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A), or within the 1-year period described in subparagraph (C), shall be deemed liquidated upon the deposit of estimated duties on the unliquidated imported merchandise, and upon the filing with the Customs Service of a written request for the liquidation of the drawback entry or claim. Such a request must include a waiver of any right to payment or refund under other provisions of law. The Secretary of the Treasury shall prescribe any necessary regulations for the purpose of administering this subparagraph.

(C) Exception[1]

An entry or claim for drawback filed before December 3, 2004, the liquidation of which is not final as of December 3, 2004, shall be deemed liquidated on the date that is 1 year after December 3, 2004, at the drawback amount asserted by the claimant at the time of the entry or claim.

---

[1] Section 1504(a)(2)(C) is not at issue here as the subject claim was filed after December 3, 2004.

## B. Factual Background

At issue in this appeal is Drawback Claim BI00004498-1[2], which was filed on Performance's behalf on March 10, 2020.  Appx2, Appx12.  Performance's drawback claim covered 48 designated import entries of "polymethyl methacrylate polymer."  *Id.*  The designated import entries liquidated on various dates between May 29, 2020 and November 27, 2020, and those liquidations became final 180 days later on dates between November 25, 2020 and May 26, 2021.  *Id.*; *see also* 19 U.S.C. § 1514(a) (providing for the "finality of decisions"), § 1514(c)(3) (providing 180 days to protest a liquidation).  On April 30, 2021, CBP liquidated the drawback claim at the amount of zero drawback.  ECF No. 7-2, CIT Court No. 22-44.

## C. Prior Proceedings

In its briefing before the trial court, Performance argued that CBP's liquidation of the drawback claim was void as the claim was deemed liquidated a year after it was filed by operation of 19 U.S.C. § 1504(a)(2)(A).  Performance thus contended that the subject claim should be liquidated at the amounts asserted in its claim.[3]

---

[2] In its decision, the trial court referred to this claim as Drawback Claim 1.  The trial court also decided another drawback claim, BI00003408-1, in Performance's favor. That claim—Drawback Claim 2—is not before this Court on appeal.

[3] This action does not concern whether CBP was correct on the merits in determining that Performance was not entitled to any drawback on its claim; rather, the sole issue is whether the claim had already been deemed liquidated by operation of law before CBP determined that the claim was not eligible for drawback.

We responded that the claim was not subject to deemed liquidation under section 1504(a)(2)(A). Further, because section 1504(a)(2)(B) requires the claimant (and the importer) to trigger a deemed liquidation, and Performance and the importer did not do so, we explained that Performance's claim was also not subject to deemed liquidation under section 1504(a)(2)(B). Thus, the claim was not deemed liquidated under either section 1504(a)(2)(A) or (B). As a result, we demonstrated that Performance's drawback claim was properly liquidated by CBP at zero drawback.

In parsing these provisions, the trial court explained that "drawback claims whose import entries have not been liquidated <u>and become final</u> within one year of the filing of the drawback claim are excepted from the general deemed liquidated drawback provision" of subparagraph (A). Appx14 (emphasis in original). Because Performance's drawback claim covers import entries whose liquidations had not become final within a year of the filing of the claim, and because Performance "did not follow the procedure outlined in subparagraph (B) to force liquidation of its drawback claim," the trial court held that Performance is not entitled to drawback on the claim. Appx15. Accordingly, the trial court concluded that "{b}ecause the import entries underlying Drawback Claim 1 had not been liquidated and become final within one year of the filing of the drawback claim, subparagraph (A) did not apply. As Performance failed to comply with the statutory requirements of subparagraph (B),

it is not entitled to the deemed liquidation rate it asserted as the drawback claimant under Drawback Claim 1." Appx16.

## SUMMARY OF ARGUMENT

This Court should affirm the trial court's judgment that Performance's drawback claim was not deemed liquidated by operation of 19 U.S.C. § 1504(a)(2)(A). The import entries underlying Performance's drawback claim had not all liquidated and become final within a year of the claim being filed, and consequently, the claim was foreclosed from deemed liquidation under subparagraph (A). CBP's liquidation of the claim at zero drawback was therefore proper and in accordance with law.

Far from inserting limiting language from subparagraph (B) into subparagraph (A), as Performance argues, the trial court necessarily construed the two provisions together, as their terms direct, in order to give effect to the entirety of both provisions, rather than render the applicability of subparagraph (B) a nullity, as results with Performance's reading of the statute. As properly construed, a deemed liquidation under subparagraph (A) occurs only when all liabilities and issues pertaining to the designated import entries have been fixed and resolved, *i.e.*, final, within a year of the claim being filed.

Contrary to Performance's contention that subparagraph (A) applied to its claim because the designated import entries had already liquidated within a year of the drawback claim being filed, subparagraph (A) applies only if subparagraph (B) does

not, and subparagraph (B) applies equally to drawback claims covering import entries whose liquidations have not become final within a year of the claim being filed as it does for claims covering import entries that remain unliquidated a year after the drawback claim is filed. The deposit of estimated duties is a condition precedent to invoking a deemed liquidation under subparagraph (B), not a temporal requirement to be satisfied at the time a request for deemed liquidation under the provision is made. Performance could, therefore, have forced a deemed liquidation of its claim under subparagraph (B), but did not do so.

Performance is incorrect that congressional intent is "frustrated" when certain drawback claims, such as Performance's, are not deemed liquidated by operation of law under either subparagraph (A) or (B). Unlike the singular statutory provision, 19 U.S.C. § 1504(a)(1), governing the deemed liquidation of consumption entries, Congress specifically created a two-track framework for the deemed liquidation of unliquidated drawback claims upon the one-year anniversary of their filing: either automatically under subparagraph (A) for claims where the designated import entries are all liquidated and final, or at the election and compliance of claimants under subparagraph (B) for claims where the import entries are unliquidated or nonfinal. Because Performance's drawback claim was ineligible for deemed liquidation under the former provision, and because Performance failed to invoke deemed liquidation under the latter provision, its claim did not deem liquidate as a matter of law.

11

Accordingly, we respectfully ask this Court to affirm the judgment of the trial court denying drawback on Performance's claim.

## ARGUMENT

## I.     Standard of Review

The interpretation of statutes and regulations is reviewed *de novo. Facebook, Inc. v. Windy City Innovations, LLC*, 953 F.3d 1313, 1321 (Fed. Cir. 2020); *Abbott Labs. v. United States*, 573 F.3d 1327, 1330 (Fed. Cir. 2009).

## II.    The Subject Drawback Claim Did Not Deem Liquidate Under 19 U.S.C. § 1504(a)(2)(A) or (B)

Pursuant to the terms of 19 U.S.C. § 1504(a)(2), Performance's drawback claim was not deemed liquidated under subparagraph (A).  Nor did Performance force a deemed liquidation of its claim in accordance with subparagraph (B).  As a result, Performance's drawback claim was not deemed liquidated as a matter of law.

"As in any statutory construction case, '[w]e start, of course, with the statutory text,' and proceed from the understanding that '[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.'" *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (*quoting BP America Production Co. v. Burton*, 549 U.S. 84, 91 (2006)).  "We reiterate that 'when [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Id.* at 381 (*quoting Hartford Underwriters Ins. Co. v.*

*Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)) (additional internal quotation marks omitted).

As expressly set forth in the statute (at 19 U.S.C. § 1504(a)(2)), subparagraph (B), not subparagraph (A), governs claims for drawback whose designated import entries have not been liquidated and become final within the one-year period after the claim is filed. 19 U.S.C. § 1504(a)(2)(A) ("In general. Except as provided in subparagraph (B) or (C)…"). By its terms, subparagraph (A) does not apply to claims "as provided in subparagraph (B)," and subparagraph (B) provides for "claim{s} for drawback whose designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A)" [that is, "within 1 year from the date of entry or claim"]. 19 U.S.C. § 1504(a)(2)(A)-(B). Thus, only "19 U.S.C. § 1504(a)(2)(B) governs the liquidation of drawback claims whose import entries have not 'been liquidated and become final' within the one-year period described in subparagraph (A)." Appx9. *See Ford*, 44 F. Supp. 3d at 1344 ("Subparagraph (B) applies generally to drawback entries and claims where one or more of the import entries that underlie the drawback entry or claim 'have not been liquidated and become final within the 1–year period described in subparagraph (A)' (*i.e.,* 'within 1 year from the date of the [drawback] entry or claim')").

As the statute directs, should CBP not liquidate a drawback claim covering import entries that have liquidated and become final within a year of the claim being

13

filed, then absent an extension or suspension of the claim, 19 U.S.C. § 1504(a)(2)(A) specifies that the claim shall be deemed liquidated at the drawback amount asserted by the claimant. And, a year after a drawback claim is filed, 19 U.S.C. § 1504(a)(2)(B) provides claimants with the means to trigger a deemed liquidation of the drawback claim even if the underlying import entries have not liquidated or if the liquidation of the entries have not become final. Thus, there are two avenues for eligible unliquidated drawback claims to become deemed liquidated a year after their filing: on their own under subparagraph (A) for claims covering liquidated and final import entries, or by a claimant actively satisfying the conditions of subparagraph (B) for claims covering import entries that have not liquidated and become final within a year of the claim being filed.

Applying this statutory framework to the case at hand, Performance's drawback claim could not be, and was not, deemed liquidated under subparagraph (A). For a deemed liquidation under subparagraph (A) to have occurred, the liquidations of all 48 underlying import entries must have been final by March 10, 2021, *i.e.*, one year after the drawback claim was filed on March 10, 2020. But that did not happen, as the liquidation of at least one designated import entry did not become final until well after a year of the claim being filed, on May 26, 2021, *i.e.*, 180 days from November 27, 2020. *See* 19 U.S.C. § 1514(a) (providing for the "finality of decisions"), § 1514(c)(3) (providing 180 days to protest a liquidation); *see also* Appx15 ("The import entries

14

underlying Drawback Claim 1 had been liquidated but had not yet become final within one year of the filing of the drawback claim because the protest period had not yet ended. 19 U.S.C. § 1514 dictates that liquidations of import and drawback entries are final unless a protest is filed."). Accordingly, the trial court correctly concluded that "{b}ecause the import entries underlying Drawback Claim 1 had not been liquidated and become final within one year of the filing of the drawback claim, subparagraph (A) did not apply." Appx16.

Nor did Performance's claim deem liquidate in accordance with 19 U.S.C. § 1504(a)(2)(B). "By its terms subparagraph (B) is available where a drawback claim's designated import entries have not been liquidated and become final within one year of the filing of the drawback claim." Appx13-14. However, unlike subparagraph (A), in which drawback claims subject to the provision deem liquidate automatically as a matter of law a year after being filed, subparagraph (B) requires claimants to take active steps to trigger a deemed liquidation. The trial court unpacked the application of subparagraph (B) and the particular steps to trigger a deemed liquidation under the provision as follows:

> Drawback may be based on estimated duties if the import entry has not been liquidated, or the liquidation has not become final (for various reasons, including a protest being filed, statutory suspension, or court order), and the drawback claimant and any other party responsible for the payment of duties each files a written request for payment of drawback, waiving any right to payment or refund under other

15

provisions of law. 19 U.S.C. 1504(a)(2)(B); 19 C.F.R. §
190.81(b).

Appx6. The trial court also correctly explained that "…the availability of the elective

subparagraph (B) procedure cannot arise until after the close of the one-year period

following filing of the claim…" Appx16, fn. 12. Because Performance took no steps

in accordance with subparagraph (B) to request from CBP a deemed liquidation of its

drawback claim a year after it was filed (or at any point for that matter), the claim

could not deem liquidate under the provision. Thus, the trial court correctly

concluded that "{a}s Performance failed to comply with the statutory requirements of

subparagraph (B), it is not entitled to the deemed liquidation rate it asserted as the

drawback claimant under Drawback Claim 1." Appx16.

On appeal, despite the straightforward application of 19 U.S.C. § 1504(a)(2) to

the subject drawback claim, Performance nonetheless contends that its claim became

deemed liquidated pursuant to section 1504(a)(2)(A) a year after the claim was filed,

on March 10, 2021, because the import entries underlying the claim had all liquidated

within a year of the claim being filed. Blue Br. 7. In purported support for this

contention, Performance argues that the trial court impermissibly lifts limiting

language from subparagraph (B) into the scope and application of subparagraph (A);

that Performance could not have invoked deemed liquidation under subparagraph (B);

and that the trial court's decision creates a third-category of indefinitely open

drawback claims, subject to neither subparagraph (A) nor (B), in contravention of congressional intent. Blue Br. 11. We address these arguments below.

## A. Subparagraphs (A) and (B) Must Be Construed Together

Performance maintains that "{t}he Trade Court's decision in this case infers words into 19 U.S.C. § 1504(a)(2)(A) which Congress did not place there." Blue Br. 18-19. In Appellant's view, "{s}uch a reading of § 1504(a)(2)(A) would effectively condition the one-year liquidation requirement with the term 'unless import entries designated in the claims have been liquidated, and 180 days have elapsed since liquidation ....'" *Id.* Performance fails to appreciate, however, that subparagraph (A) does not exist or operate in a vacuum, but rather, the terms of sections 1504(a)(2)(A) and (B) specifically relate to one another, and thus, are necessarily construed together.

As is well-established, the "whole-text canon" "calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 167 (2012). "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Regions Hospital v. Shalala*, 522 U.S. 448, 460 n.5 (1998) (citations and quotations omitted). It is a "central tenet of interpretation" that "a statute is to be considered in all its parts when construing any one of them." *Lexecon Inc. v. Milberg Weis Bershad Hynes & Lerach*, 523 U.S. 26, 36

17

(1998); *see also Candle Corp. of Am. v. United States*, 374 F.3d 1087, 1093 (Fed. Cir. 2004) (a court "will not look merely to a particular clause in which general words may be used but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give it such a construction as will carry into execution the will of the Legislature.") (citation omitted).

When reading sections 1504(a)(2)(A) and (B) together, as their specific terms direct, a deemed liquidation of a drawback claim under subparagraph (A) occurs only when all of the designated import entries are liquidated *and final* by the end of the one-year period, as measured from the date the drawback claim is filed. This is made evident by subparagraph (A) applying only to a potential deemed liquidation of claims that are not covered by subparagraphs (B) or (C) ("Except as provided in subparagraph (B) or (C)…"), and subparagraph (B) specifically relating to, and covering, claims with unliquidated and nonfinal import entries "within the 1-year period described in subparagraph (A)…." Subparagraph (B) thus specifically covers drawback claims whose designated import entries have not been liquidated and *become final* within a year of the claim being filed, like Performance's claim at issue. *See* Appx15 ("Subparagraph (B), as an exception to subparagraph (A), clearly outlines the procedure a claimant must follow to liquidate its drawback claim when its designated import entries have not been liquidated and become final within one year.").

Yet Performance views subparagraph (A) without any relation to subparagraph (B), as if the provisions operate independently within their respective silos. In Performance's view, "19 U.S.C. § 1504(a)(2)(A) clearly sets out an unambiguous rule: unless Customs acts to extend the liquidation period, a drawback claim not liquidated on the anniversary date of its filing is 'deemed liquidated' as filed on its anniversary date." Blue Br. 22. Performance thus concludes that "{i}t was error for the Trade Court to read conditions of the optional procedure set out in 19 U.S.C. § 1504(a)(2)(B) into the otherwise clear time-limit command of § 1504(a)(2)(A)." *Id.*

But if subparagraph (A) were to apply even when the liquidations of the underlying import entries were nonfinal by the end of the 1-year statutory period, as Performance views the provision, then the phrase "and become final" in subparagraph (B) would be read out of the provision, rendering it toothless and advisory. This is not a tenable construction of the statutory provisions, as the trial court recognized. "Any application of subparagraph (A) that ignores the status of the underlying consumption entries renders the safeguards of subparagraph (B) a nullity." Appx16. *See also, e.g., Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant….") (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp. 181–186 (rev. 6th ed. 2000)); *Bailey v. United States*, 516 U.S. 137, 146 (1995), *superseded by statute*, as stated in *Welch v. United States,* 578 U.S.

120 (2016) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning.").

Thus, as properly framed by the trial court, "{u}nder subparagraph (A), interpreted in the context of the whole statute, 'an entry or claim for drawback' (absent an extension or suspension, not applicable here) either deems liquidated on the first anniversary of the filing of the claim, or it doesn't." Appx15. And on that score, it necessarily follows that when giving effect to the terms of both sections 1504(a)(2)(A) and (B), "{d}rawback claims are deemed liquidated automatically if all underlying consumption entries are liquidated and final within one year of the drawback claim and liquidation of the drawback claim does not occur by that time." Appx15-16.

There is good reason for automatic deemed liquidations under subparagraph (A) to occur only when the underlying import entries have liquidated and become final. To begin, CBP need not delay deciding drawback claims when all issues on the import entries have been settled; so subparagraph (A) provides claimants with relief in those instances.

But if a particular event (*e.g.*, a protest, suspension, etc.) prevents the liquidation of import entries from becoming final, then drawback claims covering those entries are not ripe for liquidation under subparagraph (A) given the significant risk of double-dipping. Take for example an importer who has a protest pending with CBP

concerning import entries that are also subject to a filed drawback claim.  The importer's liability on those entries remains subject to change while the protest is pending, and could result in the protest being granted and the importer receiving refunds of the duties collected on the entries.  19 U.S.C. § 1515(a) (CBP "shall review the protest and shall allow or deny such protest in whole or in part.  Thereafter, any duties, charge, or exaction found to have been assessed or collected in excess shall be remitted or refunded and any drawback found due shall be paid.").

But if the drawback claim covering those nonfinal entries could also be deemed liquidated under subparagraph (A) before the protest is decided in the importer's favor, then the importer would receive refunded duties via its protest on the import entries even though the drawback claimant had already received drawback via the deemed liquidation of the claim covering the now same refunded entries.  This scenario results in two payments (one to the importer on protest and one to the drawback claimant) for the same duties.  Under Performance's reading of subparagraph (A), this outcome—refunding collected duties on the same import entries twice—is a necessary (though absurd) consequence of the deemed liquidation regime of drawback claims.

Fortunately, Congress has structured the deemed liquidation statute for drawback claims so that this scenario does not occur automatically under subparagraph (A).  Under subparagraph (A), drawback claims cannot be finalized until

the designated import entries are first finalized.  As the trial court soundly reasoned, "{t}his makes sense because Customs knows what drawback is owed on the consumption entries only when they are final…."  Appx16.

## B. Performance's Drawback Claim Was Eligible For Deemed Liquidation Under Subparagraph (B), But Performance Did Not Trigger The Provision

Unlike subparagraph (A), subparagraph (B) provides a statutory mechanism for claimants to invoke a deemed liquidation of a claim on the one-year anniversary of the drawback claim if the designated import entries have not liquidated or the liquidations have not become final, while also safeguarding against the very double-dipping that Performance's reading of the statute would permit without constraint.  Subparagraph (B) achieves this balance by requiring drawback claimants to submit with their liquidation request to CBP a waiver of any right to receive refunds on the same import entries under any other provision of law.[4]  *See also* 19 C.F.R. § 190.81(b), which implements 19 U.S.C. § 1504(a)(2)(B) and further provides that, where the drawback claimant is not the importer, "any other party responsible for the payment of

---

[4] Rather than wait a year after filing a drawback claim to force a deemed liquidation under 19 U.S.C. § 1504(a)(2)(B) and 19 C.F.R. § 190.81(b), CBP's regulations also provide for qualifying drawback claimants and claims to receive accelerated payment (AP) of estimated drawback *when the claim is filed* (subject to 100% bonding), instead of when the claim liquidates.  *See* 19 C.F.R. § 190.92.  Performance's drawback claim, however, was not eligible for AP and Performance does not claim that it should have received AP.

liquidated import duties" must also request in writing that the drawback claim be paid and waive its rights to refund by any other means. This, Performance (and the importer) did not do, and as a result, its claim was ineligible for deemed liquidation under both subparagraphs (A) and (B).

Performance maintains that subparagraph (B)—which is entitled "Unliquidated imports"—could not have applied to its claim because all of the import entries underlying its claim had liquidated prior to the one-year anniversary of the claim being filed. Blue Br. 9. Performance argues that "§ 1504(a)(2)(B) provides for the payment of drawback based on 'estimated duties.' As of the anniversary date of its filing, Performance Additives' claim had no 'estimated duties' for drawback to be paid on, only 'liquidated' duties." *Id.*; *see also* Blue Br. at 18 (stating that Performance "could not have asked for payment of drawback on the basis of 'estimated duties' because it had no estimated duties, only liquidated duties."). Thus, Performance contends that it could not have invoked a deemed liquidation under subparagraph (B). Blue Br. 3, 8-11, 15, 17. Performance is mistaken.

First, subparagraph (B), while titled "Unliquidated imports", expressly applies to drawback claims "whose designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A)." Subparagraph (B), therefore, applies to drawback claims, on the one-year anniversary of their filing, in which the liquidation of the designated import entries has not

become final, *i.e.,* nonfinal liquidated entries. 19 U.S.C. § 1504(a)(2) does not foreclose invoking a deemed liquidation under subparagraph (B) if the imported merchandise had liquidated within a year of the claim being filed but the liquidation was not yet final; rather, the statute permits the deemed liquidation of drawback claims covering unliquidated import merchandise and those claims covering liquidated but nonfinal imported merchandise to be triggered under subparagraph (B).

Further, the phrase "the deposit of estimated duties on the unliquidated imported merchandise" is a condition precedent to triggering a deemed liquidation under subparagraph (B), and is not a temporal requirement to be completed when a claimant files a request with CBP to force a deemed liquidation under the provision. Yet Performance's reading of subparagraph (B) would mean that a drawback claimant could only trigger a deemed liquidation under the provision if, contemporaneously with its written request to CBP for a deemed liquidation, (1) the imported merchandise subject to the claim remained unliquidated; *and* (2) the importer had yet to deposit estimated duties on that unliquidated merchandise, but then does so at that time of the request. This is a factual and legal impossibility.

Estimated duties are required to be deposited on unliquidated imported merchandise at or near the time of entry of the merchandise, 19 U.S.C. § 1505(a), and not at some future date months or years later after the merchandise is imported, such as when a drawback claimant seeks to invoke a deemed liquidation with respect to

that merchandise under subparagraph (B). Thus, if the legal requirements are properly followed, estimated duties will generally already be deposited before a drawback claim covering those entries becomes eligible for deemed liquidation under any provision of section 1504(a)(2). Whether those estimated duty deposits have become liquidated duties or not matters not for purposes of determining the applicability of subparagraph (B); rather, the operation of the provision hinges on whether the liquidations have become final, and whether the proper written request(s) and waiver(s) were made in accordance with the statutory and regulatory conditions.

Nonetheless, Performance maintains that "the special procedure provided in 19 U.S.C. § 1504(a)(2)(B) could be invoked to secure 'deemed liquidation' of a drawback claim *before* the one-year time limit specified in 19 U.S.C. § 1504(a)(2)(A). Moreover, the § 1504(a)(2)(B) procedure would not be available *after* the one-year anniversary of the claim filing unless Customs had extended the one-year liquidation period in accordance with § 1504(b)." Blue Br. 17 (emphasis in original). But this rendering of the deemed liquidation statute does not make logical or textual sense.

As the trial court explained, "{t}he question of whether the drawback claim was deemed liquidated or was not deemed liquidated must be ascertainable at that time, i.e., on the one-year anniversary, not some time in the future." Appx15. The controlling date for determining which provision of section 1504(a)(2) applies to a given claim is the statutory one-year anniversary of when the drawback claim is filed,

not some arbitrary date before or after that anniversary. Yet Performance's rendering of the statute elides the phrase "within the 1-year period described in subparagraph (A)" from subparagraph (B), so that a deemed liquidation would now have to be invoked *before* the "1-year period described in subparagraph (A)," even though that period is expressly "1 year *from the* date of entry or claim." (emphasis added). The trial court made clear that "the availability of the elective subparagraph (B) procedure cannot arise until after the close of the one-year period following filing of the claim: the statute makes it available only if there is an underlying consumption entry with a liquidation that did not 'become final within the 1-year period described in subparagraph (A). . . .' 19 U.S.C. § 1504(a)(2)(B)." Appx16, fn. 12.

Accordingly, if on the one-year anniversary of the filing of a drawback claim, the underlying import entries have liquidated and become final, then absent an extension or suspension of the claim, it will deem liquidate automatically under subparagraph (A) if not liquidated by CBP prior to that time. If, however, on the one-year anniversary of the filing of a drawback claim, the underlying import entries (for which estimated duties had previously been deposited upon or near the time of entry) have not liquidated or have liquidated but the liquidations are not final, then a claimant may now request that its claim liquidate under subparagraph (B).

Despite Performance's protestations that subparagraph (B) was unavailable to it,[5] (1) estimated duties were deposited on the import entries subject to Performance's drawback claim, as is required for all import entries; (2) those entries were then liquidated by CBP; and (3) within a year of the drawback claim being filed, those liquidations had not yet become final.  ECF No. 7-2, CIT Court No. 22-44.  As a result, Performance (and the importer) could have submitted a request to CBP, with waiver, after the one-year anniversary of filing its claim, to liquidate the drawback claim, and the claim would have then been deemed liquidated under subparagraph (B).  But Performance did not do so.  As a consequence, deemed liquidation of Performance's claim under either subparagraph (A) or (B) was foreclosed when CBP liquidated the drawback claim at zero drawback.  *See* Appx16, fn. 12. ("And if that procedure [subparagraph (B)] is still available on the one-year anniversary of the filing

---

[5] Performance represents that the trial court "admitted" that subparagraph (B) was "inapplicable" to the subject drawback claim.  Blue Br. 3-4.  This is not an accurate description of the opinion.  The trial court stated: "In this scenario, subparagraph (B) provides a mechanism by which a claimant may prompt (or 'force') Customs to liquidate its drawback claim before its designated import entries, if a claimant places a deposit and files a written request. 19 C.F.R. § 190.81(b); see supra pp. 4-5. As indicated, Plaintiff concedes it does not qualify under this provision."  Appx14 (emphasis in original).  Performance does not qualify for deemed liquidation under this provision because it (and the importer) did not file a written request, as is required by the statute, not because subparagraph (B) was otherwise unavailable to Performance.

of the drawback claim, the deemed liquidation described in subparagraph (A) does not

occur.").

### C. Drawback Claims That Are Ineligible For Deemed Liquidation Under Subparagraph (A), or For Which Deem Liquidation Is Not Invoked Under Subparagraph (B), Do Not Run Counter To Congressional Intent

Performance also contends that the trial court's decision "creates an anomaly

where a broad class of drawback claims will be subject to no time limitation on

liquidation, frustrating the Congressional intent in enacting 19 U.S.C. §

1504(a)(2)(A)." Blue Br. 11 (emphasis omitted).  Performance maintains that "{s}uch

a result would be directly antithetical to the Congressional purposes of ensuring that

drawback claims are timely liquidated, that claimants are not subject to an extended

period where Customs may challenge their claims, and that sureties on drawback

claims (who secure accelerated drawback payments on a dollar-for-dollar basis) are

not exposed to liabilities for extended periods.  *See* S. Rep. 108-28, *supra*."  Blue Br. 24.

Contrary to Performance's contentions, aside from subparagraph (C) (not at

issue here), Congress, by design, created a specific two-track framework under 19

U.S.C. § 1504(a)(2) for unliquidated drawback claims to be deemed liquidated by

operation of law one-year after the claims are filed: (1) under subparagraph (A) for

claims whose designated import entries had liquidated and become final within one

year of the claim being filed; and (2) under subparagraph (B) for claims whose

designed import entries had *not* liquidated and become final within one year from the date of the claim filing, so long as the statutory and regulatory safety mechanisms of that provision are affirmatively invoked and complied with. Put differently, Congress provided for drawback claims with no outstanding import entry issues to become deemed liquidated automatically a year after the claim is filed, as a matter of law (19 U.S.C. § 1504(a)(2)(A)), and for all other claims to become deemed liquidated at the election and compliance of the claimant (and importer) (19 U.S.C. § 1504(a)(2)(B)). But for all other claims, such as Performance's, where the claim is neither subject to subparagraph (A), nor was triggered by the claimant and importer under subparagraph (B), the claim may be affirmatively liquidated by CBP after all of the designated import entries are liquidated and final.

Congress, therefore, provided claimants with the means to force a deemed liquidation, even in instances where the claim is predicated on nonfinal import entries, but ultimately, it specified that the claimants themselves must take the requisite action to actually request and secure the deemed liquidation, and ensure against double payment. Performance can hardly decry that its claim did not deem liquidate under either subparagraph (A) or (B), even though the claim *could have* been subject to the latter provision if only Performance had invoked and then complied with the statute's requirements. Congressional intent of the deemed liquidation statutory framework cannot be said to be "frustrated" (Blue Br. 11) if claimants are specifically empowered

29

to trigger a deemed liquidation but neglect to do so.  Consequently, when a drawback claim concerns nonfinal import entries a year after the claim is filed, the claim may be liquidated by CBP after all of the designated import entries are liquidated and final, unless, before then, the claimant forces a deemed liquidation of the claim in accordance with the requirements of subparagraph (B).

Importantly, the statutory provisions for the deemed liquidation of drawback claims differ from the provision for the deemed liquidation of import entries. Compare 19 U.S.C. § 1504(a)(2) (entries or claims for drawback) with 19 U.S.C. § 1504(a)(1) (entries for consumption).  With respect to the latter, absent an extension or suspension pursuant to statute or court order, unliquidated consumption entries will generally become deemed liquidated on the one-year anniversary of their— depending on the particular circumstances—date of entry, withdrawal, or other enumerated statutory event.  19 U.S.C. § 1504(a)(1)(A)-(E).  In this way, the rule for the deemed liquidation of drawback claims covering liquidated and final import entries under section 1504(a)(2)(A) echoes the singular deemed liquidation provision for import entries under section 1504(a)(1), and CBP need not delay in liquidating such claims and entries.

But the liquidation of drawback claims is not always cut and dry when the liabilities of the underlying import entries remain outstanding.  Congress addressed this particular scenario unique to drawback claims with the enactment of section

1504(a)(2)(B), which sets forth certain safeguards when liquidating drawback claims covering such entries—safeguards that are not necessary when all issues concerning the particular import entries have been resolved.

As indicated in the Senate Report, quoted by Performance at Blue Br. 14, Congress sought to establish a timeframe for the liquidation of drawback claims, previously absent, but there is no indication in this legislative history that Congress intended for *all* drawback claims to become deemed liquidated by operation of law in the same manner as all import entries do. *See* S. Rep. 108-28 at 172-73 (2003). Presumably, Congress understood and recognized the material differences between liquidating drawback claims and import entries when enacting section 1504(a)(2)(B) as an express exception to section 1504(a)(2)(A). *See*, *e.g.*, *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 461-62 (2002) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (citations and quotations omitted).

Consequently, there is nothing aberrant in the statutory framework governing deemed liquidation when a drawback claim that is not subject to deemed liquidation under subparagraph (A) is affirmatively liquidated by CBP when a claimant elects not to force a deemed liquidation under subparagraph (B). CBP's liquidation of Performance's drawback claim at zero drawback was therefore proper and in accordance with law.

31

# CONCLUSION

For these reasons, we respectfully request that this Court affirm the judgment of the trial court.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

By:     /s/ Justin R. Miller
        JUSTIN R. MILLER
        Attorney-In-Charge
        International Trade Field Office

Of Counsel:                                    /s/ Alexander Vanderweide
Yelena Slepak                                  ALEXANDER VANDERWEIDE
Deputy Assistant Chief Counsel                 Senior Trial Counsel
Alexandra Khrebtukova                          Department of Justice, Civil Division
Senior Attorney                                Commercial Litigation Branch
International Trade Litigation                  26 Federal Plaza, Room 346
U.S. Customs & Border Protection               New York, New York 10278
                                               (212) 264-0482 or 9230
                                               Attorneys for Defendant-Appellee

November 22, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of November, 2024 a copy of the foregoing Brief for Defendant-Appellee, United States, was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Alexander Vanderweide
ALEXANDER VANDERWEIDE
Senior Trial Counsel

## CERTIFICATE OF COMPLIANCE PURSUANT TO FRAP 32

I, Alexander Vanderweide, a Senior Trial Counsel in the International Trade Field Office of the Department of Justice, who is responsible for the foregoing brief, relying upon the Microsoft Word count feature of the word processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under Rule 32(a)(7)(B), and contains 7542 words.

/s/ Alexander Vanderweide
ALEXANDER VANDERWEIDE
Senior Trial Counsel