**2024-2059**

# United States Court of Appeals
# for the Federal Circuit

---

**PERFORMANCE ADDITIVES, LLC,**

*Plaintiff-Appellant,*

***v.***

**UNITED STATES.**

Defendant-Appellee.

---

Appeal from the United States Court of International Trade,
Court No. 22-cv-00044, Judge Jane A. Restani

---

**REPLY BRIEF OF PLAINTIFF-APPELLANT
PERFORMANCE ADDITIVES, LLC,**

---

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Ave, Ste. 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

John M. Peterson
*Counsel of Record*
Patrick B. Klein
NEVILLE PETERSON LLP
55 Broadway, Ste. 2602
New York, NY 11229
(212) 635-2730
jpeterson@npwny.com

December 13, 2024

*Attorneys for Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-2059

**Short Case Caption** Performance Additives, LLC v. US

**Filing Party/Entity** Performance Additives, LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/16/2024

Signature: /s/ John M. Peterson

Name: John M. Peterson

**FORM 9. Certificate of Interest**

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Performance Additives, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| John P. Donohue<br>Neville Peterson LLP | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)    ☐   No    ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ................................................................. ii

TABLE OF AUTHORITIES ............................................................ iii

ARGUMENT ............................................................................... 3

I.    19 U.S.C. § 1504(a)(2) Establishes a Time Limit for Liquidation of Drawback Claims and Three (3) Standalone, Independent "Deemed Liquidation" Provisions. ................................................ 3

      A.    Subsection 504(a)(2)(A). .......................................... 4

      B.    Subsection 504(a)(2)(B). .......................................... 6

      C.    Subsection 504(a)(2)(C). .......................................... 8

II.    The Trade Court Erred by Reading the Conditions of 19 U.S.C. § 1504(a)(2)(B) into the Clear Language of 19 U.S.C. § 1504(a)(2)(A). ..... 11

III.    In Making Liquidation of Drawback Claims a Statutory Concept, Congress Intentionally Omitted the Concept of "Liquidated and Final" from 19 U.S.C. § 1504(a)(2)(A). ................................................ 18

CONCLUSION ............................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Bates v. United States*, 522 U.S. 23 (1997)................................................................12

*Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078 (9th Cir. 2005)...........................19

*Cox v. West,* 149 F.3d 1360 (Fed. Cir. 1998) ..........................................................13

*Dept. of Homeland Sec. v. McLean*, 574 U.S. 383 (2015).......................................19

*Dig. Realty Trust v. Somers,* 583 U.S. 149 (2018). .................................................19

*Energy East Corp. v. United States*, 645 F3d 1358 (Fed. Cir. 2011) ......................19

*Ford Motor Co. v. United States*, 44 F. Supp. 3d 1330 (Ct. Int'l Tr. 2015).........9, 10

*Freytag v. Commissioner*, 501 U.S. 868 (1991) ......................................................13

*George v. McDonough*, 596 U.S. 740 (2022)...........................................................19

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1
    (2000) .....................................................................................................................12

*In re Princo Corp.,* 486 F.3d 1365 (Fed. Cir. 2007).................................................13

*Lamie v. United States Tr.*, 540 U.S. 526 (2004) .....................................................19

*Sebelius v. Cloer*, 569 U.S. 369 (2013) ...................................................................12

*Towne v. United States*, 113 Fed. Cl. 87 (2013). ....................................................13

*United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213
    (1996) .....................................................................................................................13

**Statutes**

19 U.S.C. § 1504 ..................................................................................... passim

19 U.S.C. § 1514 .......................................................................................................7

Pub. L. 108-429, 118 Stat. 2434 (2004)......................................................... 2, 3, 15

Pub. L. 95-410, 92 Stat. 888 (1978).........................................................................2

**Regulations**

19 C.F.R. § 190.81 .................................................................................................8, 10

19 C.F.R. § 190.81 (2003 ed.)...................................................................................18

19 C.F.R. § 190.92 .....................................................................................................1

19 C.F.R. § 191.92 .....................................................................................................1

**Other Authorities**

S. Rep. 108-28 (2003) ..................................................................................... 1, 15, 20

U.S. Gov't Accountability Office, GAO 20-182, Customs and Border
    Protection: Risk Management for Tariff Refunds Should be Improved
    (2019) .....................................................................................................................15

Plaintiff-Appellant, Performance Additives LLC ("Performance Additives" or "Plaintiff-Appellant"), in accordance with Rules 28(a) and 32(a) of the Federal Rules of Appellate Procedure, and the Rules of Practice of the U.S. Court of Appeals for the Federal Circuit, hereby submits its reply brief in this appeal.

By 2004, Congress had become concerned by Customs' delays in liquidating claims[1] for duty drawback and in the agency's substantial backlog of unliquidated duty drawback claims. Congress found that "drawback claims are generally not liquidated by U.S. Customs within a reasonable period of time and therefore remain outstanding for years,"[2] creating "a contingent liability for U.S. businesses."[3] Even when a drawback claimant had qualified for and received "accelerated payment of drawback,"[4] Customs' long delays in liquidating claims created:

> " … an unwarranted liability and the possibility that the claimant will have to reimburse the U.S. Treasury any drawback monies paid to the claimant—even several years from when the claim was actually made and money was paid to the drawback claimant."[5]

---

[1] The term "drawback entry" refers to the Customs Form ("CF") 7553 document filed with CBP when a drawback claim is made. The term "drawback claim" refers to the CF 7553 document plus supporting materials. For purposes of this brief, we will refer to drawback transactions as "drawback claims" unless otherwise noted.

[2] S. Rep. 108-28 (2003) at p. 172-73.

[3] *Id.*

[4] *See* 19 C.F.R. § 190.92 (post-2019); 19 C.F.R. § 191.92 (pre-2019).

[5] S. Rep. 108-28 at p. 172-73.

To address this problem, Congress, in section 1563(e) of the Miscellaneous Trade and Technical Corrections Act of 2004,[6] amended Section 504 of the Tariff Act of 1930, to provide time limits for the liquidation of drawback claims. Congress' goal was to require "U.S. Customs (1) to liquidate existing drawback claims, and (2) to liquidate future drawback claims within a specified period of time, as U.S. Customs already does for merchandise entered for consumption."[7] (Emphasis added).

Since 1978, when Section 209 of the Customs Procedural Reform and Simplification Act of 1978[8] enacted what is now Section 504(a)(1) of the Tariff Act, 19 U.S.C. § 1504**Error! Bookmark not defined.**(a)(1), there has been a one-year time limit on Customs' liquidation of import entries. Entries not liquidated within one year are "deemed liquidated" at the rate and amount of duty set out in the entry papers. Section 504(b) of the Tariff Act, 19 U.S.C. § 1504(b), enacted by the 1978 Act, authorizes Customs to "extend" the liquidation period for up to three (3) one-year periods, allowing a maximum of four (4) years for the agency to liquidate the entry. An entry not liquidated at the end of four years is *deemed liquidated* "as entered." *Id.*

---

[6] Pub. L. 108-429, 118 Stat. 2434 (2004).

[7] *Id.*

[8] Pub. L. 95-410, 92 Stat. 888 (1978).

Congress intended to set up a parallel system for the liquidation of drawback claims, providing a one-year limit for liquidating drawback claims, subject to up to three extensions, for a maximum of four years. As discussed herein, the Trade Court's decision allows Customs to disregard the four-year maximum time limit and creates a broad class of drawback claims for which no time limit on liquidation exists. This interpretation works a result directly contrary to the clear language of the statute and the clearly expressed intent of Congress.

**ARGUMENT**

**I.      19 U.S.C. § 1504(a)(2) Establishes a Time Limit for Liquidation of Drawback Claims and Three (3) Standalone, Independent "Deemed Liquidation" Provisions.**

Section 1563(e) of the Miscellaneous Trade and Technical Corrections Act of 2004[9] created 19 U.S.C. § 1504(a)(2), providing time limits for the liquidation of drawback claims and establishing three separate "deemed liquidation" provisions. The statutory language is as follows:

> **(a) Liquidation**
>
> *       *       *
>
> **(2) Entries or claims for drawback**
> > **(A) In general**
> > Except as provided in subparagraph (B) or (C), unless an entry or claim for drawback is extended under subsection (b) or suspended as required by statute or court order, an entry or claim for drawback not liquidated within 1 year from the date of entry or claim *shall be deemed liquidated* at the drawback amount asserted by the claimant or claim.

---

[9] Pub. L. 108-429, 118 Stat. 2434 (2004).

Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

**(B) Unliquidated imports**
An entry or claim for drawback whose designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A), or within the 1-year period described in subparagraph (C), *shall be deemed liquidated* upon the deposit of estimated duties on the unliquidated imported merchandise, and upon the filing with the Customs Service of a written request for the liquidation of the drawback entry or claim. Such a request must include a waiver of any right to payment or refund under other provisions of law. The Secretary of the Treasury shall prescribe any necessary regulations for the purpose of administering this subparagraph.

**(C) Exception**
An entry or claim for drawback filed before December 3, 2004, the liquidation of which is not final as of December 3, 2004, *shall be deemed liquidated* on the date that is 1 year after December 3, 2004, at the drawback amount asserted by the claimant at the time of the entry or claim.

19 U.S.C. § 1504 (Emphasis added).

An examination of these subsections reveals that the "deemed liquidated" provisions of each subsection are independent, standalone provisions, whose operation does not in any way depend on application of any of the other subsections. Each subsection is reviewed in turn below.

A.      **Subsection 504(a)(2)(A).**

Subsection 504(a)(2)(A) fulfills Congress' intent to create liquidation time limits for drawback claims parallel to those in place for import entries since 1978.

4

It provides that a drawback claim not liquidated within one year of its filing is "deemed liquidated" at the drawback amount asserted by the claimant or claim. CBP can avoid the one-year "deemed liquidation" provision of subsection 504(a)(2)(A) by extending liquidation in accordance with the procedures set out in subsection 504(b). Once extended, liquidation of a drawback claim may be extended up to two more times but is deemed liquidated no later than four years after the claim is filed.[10] This enactment carries out Congress' intent to establish a one-year time limit for liquidation of drawback claims, subject to extensions which may not exceed four years—the same "deemed liquidation" scheme established for import entries.[11] Subsection 504(b)(2)(A) contains a plain command—drawback claims liquidate as filed one year after claim filing—and there is only one way to avoid this result: extension of liquidation in accordance with 19 U.S.C. § 1504(b).

It is undisputed that the drawback claim which is the subject of this appeal was filed on March 10, 2020, and that Customs did not extend the one-year liquida-

---

[10] Thus, 19 U.S.C. § 1504(b)(2) provides, in pertinent part, that:

"Any entry the liquidation of which is extended under this subsection shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record, or the drawback amount asserted by the drawback claimant, at the expiration of 4 years from the applicable date specified in subsection (a).

[11] *See* 19 U.S.C. §§ 1504(a)(1), 1504(b).

tion period. It follows that the claim liquidated as filed on March 10, 2021 by oper-ation of subsection 504(a)(1). Customs' purported "no drawback" liquidation of the claim on May 14, 2021 was untimely and void.

It is equally significant to note what § 1504(a)(2)(A) does **not** say. It does not contain any reference to the import entries designated in the drawback claim, the liquidation status of those entries, or the finality of the liquidation of said import entries. It identifies no way to avoid "deemed liquidation" of claims which reach their one-year anniversary other than the "extension" of liquidation by Customs in accordance with § 1504(b) (requiring that notice of the extension be timely provided to the drawback claimant and its surety). It does not identify any circumstance in which a drawback claim remains pending after its one-year anniversary, except through extension. This Court should construe subsection 504 (a)(2)(A) according to its plain language, as illuminated by Congress' intent when enacting the statute in 2004. The Trade Court failed to do this, committing error when it read the conditions of 19 U.S.C. § 1504(a)(2)(B) into the otherwise clear and unambiguous language of subsection 1504(a)(2)(A).

### B.    Subsection 504(a)(2)(B).

Subsection 504(a)(2)(B) of Title 19 does not limit or condition subsection 504(a)(2)(A) in any way. Rather, it provides a *second*, completely independent and

self-contained, way for a drawback claimant to obtain a "deemed liquidation" of its claim at the amount of drawback specified in the claim.

It applies *only* in cases where one or more of the import entries designated in the drawback claim remains "unliquidated."[12] It recognizes Customs' administrative preference to begin "working" drawback claims only when all the underlying import entries designated in the claim have been liquidated and become final,[13] and provides a way for the drawback claimant to override that preference.

Section 504(a)(2)(B) operates in two distinct situations. <u>First</u>, it can be used to obtain a deemed liquidation *before* the one-year anniversary of the filing of a drawback claim.[14] <u>Second</u>, if Customs extends liquidation of the entry *beyond* the one-year anniversary, a claimant can use the procedure to force a "deemed liquida-

---

[12] "Liquidation" is the procedure by which Customs makes a final determination concerning the classification, value, rate and amount of duty applicable to an import entry and finalizes its determination concerning the admissibility of imported merchandise. *See* 19 U.S.C. § 1514(a). Liquidation of an import entry is statutory; "liquidations" of drawback claims, other than "deemed liquidations pursuant to 19 U.S.C. § 1504(a)(2), are administrative.

[13] *See* 19 C.F.R. § 190.81. Customs' ability to await final liquidation of import entries designated in a drawback claim is, of course, subject to any extensions of the one-year liquidation period specified in 19 U.S.C. § 1504(a)(2)(A). If a timely extension is not issued, then the entry liquidated by operation of law on its one-year anniversary and Customs lost authority to act.

[14] Of course, nothing prevents Customs from voluntarily liquidating a drawback claim before the one-year deadline.

tion" of its claim. To trigger the deemed liquidation, the claimant must request liquidation of its claim and pay (or have paid) estimated duties owed on the imported merchandise.[15]

Of course, the procedure set out in 19 U.S.C. § 1504(a)(2)(B) becomes irrelevant if a drawback claim with unliquidated import entries is deemed liquidated on its one-year anniversary pursuant to 19 U.S.C. § 1504(a)(2)(A). The statute's existence is further evidence of Congress' intent that Customs not delay unduly in liquidating drawback claims, and allows a claimant to even override extensions ordered by Customs pursuant to 19 U.S.C. § 1504(b).

## C. Subsection 504(a)(2)(C).

Subsection 504(a)(2)(C) was a "transitional rule" designed to eliminate the large backlog of unliquidated claims that Customs was holding when the Trade and Technical Corrections Act of 2004 was enacted. Subsection 504(a)(2)(C) provides that:

> An entry or claim for drawback filed before December 3, 2004, the liquidation of which is not final as of December 3, 2004, shall be deemed liquidated on the date that is 1 year after December 3, 2004, at the drawback amount asserted by the claimant at the time of the entry or claim.

---

[15] The Customs Regulations, 19 C.F.R. § 190.81(b), provide for the adjustment of drawback claims if the final liquidated duties for the import entries in the drawback claim are different than the estimated duties on which drawback was paid.

Perhaps not surprisingly, Customs declined to recognize the finality of liquidation under this provision, but the Court of International Trade held, in *Ford Motor Co. v. United States*, 44 F. Supp. 3d 1330 (Ct. Int'l Tr. 2015), that subsection 504(a)(2)(C) meant what it said, and pre-December 3, 2004 claims were in fact "deemed liquidated" on December 3, 2005, leaving Customs nothing to do thereafter.

All three of the statute's "deemed liquidation" provisions operate independently of each other, and none imposes conditions or limitations on the others. Subsection 504(a)(2)(A) provides the general rule, and implements Congress' intent that drawback claims be liquidated within one year of filing, or if that period is validly extended, no more than four years after the claim is filed—the same scheme in place for import entries since 1978.

Subsection 504(a)(2)(B) addresses a particular situation, whereby a drawback claimant whose claim includes entries which have not been liquidated (and by definition have not become final), may secure a deemed liquidation either *before* the one-year anniversary identified in 19 U.S.C. § 1504(a)(2)(A) has occurred, or after that one-year period has passed and no "deemed liquidation" has occurred because Customs has extended the liquidation pursuant to 19 U.S.C. § 1504(b).

The government suggests—wholly illogically—that the existence of "liquidated and final" import entries is somehow necessary or desirable for a "deemed liquidation" under subheading 1504(a)(2)(A)—but why should this be the case when

9

subsection 1504(a)(2)(B) expressly allows—indeed, *compels*—the occurrence of a "deemed liquidation" of the drawback claim where designated import entries *are not even "liquidated," much less "liquidated and final*?" Clearly then, the finality of liquidation of designated import entries is not a prerequisite for deemed liquidation of a drawback claim.[16]

Finally, 19 U.S.C. § 1504(a)(2)(C) provides that drawback claims filed before December 3, 2004 would be "deemed liquidated" on December 3, 2005. This rule was transitional and absolute, and not subject to extension of the statutory liquidation date, as the Trade Court ruled in *Ford Motor Co., supra.*

---

[16] It is true that "deemed liquidation" of a drawback claim under § 1504(a)(2)(B) will trigger application of the adjustment mechanism provided in 19 C.F.R. § 190.81(b). But this is not necessarily a benefit to the government or the drawback claimant. If a drawback claimant has its claim "deemed liquidated" under subsection § 1504(a)(2)(A), and one of the designated import entries subsequently liquidates with a duty increase, the claimant will not be able to recover the increased duties through drawback.

A drawback claimant concerned about such a potential duty increase could request CBP to extend the liquidation of its drawback claim. Performance Additives felt no need to do this, since it had a long history of importing the designated polymers with all import entries being liquidated "as entered," with no duty increases at liquidation.

If the government is concerned that designated import entries might liquidate at a lower duty assessment—rendering drawback paid on a "deemed liquidation" arguably excessive—Congress granted it the power to avoid that result by extending liquidation of the drawback claim under 19 U.S.C. § 1504(b). Customs failed to exercise that power here, and has no cause to now complain.

Each of the three "deemed liquidation" provisions in 19 U.S.C. § 1504(a)(2) are free-standing and independent. None of these provisions are in any way dependent or conditioned on the other. The above interpretation produces a harmonious result that gives meaning to every part of the statute.

## II. The Trade Court Erred by Reading the Conditions of 19 U.S.C. § 1504(a)(2)(B) into the Clear Language of 19 U.S.C. § 1504(a)(2)(A).

As noted above, 19 U.S.C. § 1504(a)(2)(A) sets out a clear, simple rule: unless Customs extends liquidation of a drawback claim as provided in 19 U.S.C. § 1504(b), the claim liquidates, at the amount of drawback shown in the claim, on the one-year anniversary of the claim's filing. Hard stop. On its face, the statute does not mention the import entries designated in the claim. It says nothing about their liquidation status, nor the "finality" of any liquidation status.

It was error for the Trade Court to read concepts from 19 U.S.C. § 1504(a)(2)(B) into the otherwise clear and unambiguous language of § 1504(a)(2)(A).

Initially, the lower court misread the "proviso" language in 19 U.S.C. § 1504(a)(2)(A), which states:

> *Except as provided in subparagraph (B) or (C)*, unless an entry or claim for drawback is extended under subsection (b) or suspended as required by statute or court order, an entry or claim for drawback not liquidated within 1 year from the date of entry or claim shall be deemed liquidated at the drawback amount asserted by the claimant or claim.

(Emphasis added). The italicized language in the statute is not intended to condition or limit the clear one-year "deemed liquidation unless extended" language of § 1504(a)(2)(A); it merely points to situations where "deemed liquidation" may occur under a *different* provision of the statute. Thus, deemed liquidation may occur under § 1504(a)(2)(B), either before or after the one-year period set out in § 1504(a)(2)(A). In the first instance, deemed liquidation would occur before the one-year anniversary, and would not be triggered by said anniversary. In the second instance, deemed liquidation would occur after the one-year anniversary, but only if Customs had extended liquidation of the entry before the first anniversary.

Then, the Trade Court read into § 1504(a)(2)(A) terms which did not appear in the statute and which limited operation of that deemed liquidation provision to drawback claims whose import entries had become "liquidated and final." This was error. As noted in 'Plaintiff-Appellant's principal brief, at page 18, "Where [a] statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd—is to enforce it according to its terms[.]'" *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). The Trade Court's reading also violates the rule that courts must "resist reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997); *see also Cox v.*

*West,* 149 F.3d 1360, 1363 (Fed. Cir. 1998) (quoting *Freytag v. Commissioner*, 501 U.S. 868, 873 (1991)).

It is important to note that there is no specific connector which would import the conditions of 19 U.S.C. § 1504(a)(2)(B) into § 1504(a)(2)(A). As this Court has noted:

> "[W]here there is an absence of any explicit connector between the two statutes, the Supreme Court has declined to read a definition from one statute into another, finding the absence of a cross-reference to be re-vealing."

*In re Princo Corp.,* 486 F.3d 1365, 1368 (Fed. Cir. 2007) (internal quotations omit-ted) (citing *United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213, 220 (1996)); *see also Princo*, 486 F.3d at 1368 ("Even when the definition appears in a single statute, our sister courts have also held that definitions limited to one section should not be applied to another section."); *see also Towne v. United States*, 113 Fed. Cl. 87, 95 (2013).

The government asserts that:

> "Congress specifically created a two-track framework for the deemed liquidation of unliquidated drawback claims upon the one year-anni-versary of their filing; either automatically under subparagraph (A) where the designated import entries are all liquidated and final, or at the election and compliance of claimants under subparagraph (B) for claims where the import entries are unliquidated and nonfinal.

Red Br. at 11. But that argument is undercut by the facts of this case and the government's own argument. In this case, the government asserts that Performance Additives' subject claim was not deemed liquidated by operation of subsection (A) because the claims referenced import entries which were liquidated and not "final." Red Br. at 14-15. At the same time, the government asserts that Performance Additives' claim was not liquidated pursuant to the mechanism set out in subsection (B) (which provides for "[u]nliquidated entries"). Red Br. at 15-16. Indeed, Performance Additives could not have invoked subsection (B) because all of its claim's imported entries were liquidated. Subsection (B) speaks of entries which "have not been liquidated and become final." This language must be interpreted as meaning that the import entries were neither "liquidated" nor "final." This is because the subsection (B) mechanism can only operate when there are *unliquidated* entries, since it specifies that an applicant for deemed liquidation must make payment of "estimated duties"—a concept relevant only to *unliquidated* entries. Once an entry liquidates, duties relating thereto become "liquidated" duties—meaning they are no longer "estimated" duties, but final assessments subject to protest.

By the government's reasoning, Performance Additives' claim was not liquidated pursuant to 19 U.S.C. § 1504(a)(2)(A), nor liquidated pursuant to 19 U.S.C. § 1504(a)(2)(B). It was not subject to 19 U.S.C. § 1504(a)(2)(C) (a transitional rule

which ceased operating in 2005). The claim thus fell out of the operation of Congress' statutory framework for the liquidation of drawback entries altogether, and was—as the government argues—no longer subject to any temporal limitation on liquidation.

The notion that Congress created a "two-track framework" for deemed liquidation under which some claims are not subject to "deemed liquidation" at all, and are not subject to any time limit on liquidation is—to be charitable—nonsense. Such an interpretation is blatantly contrary to Congress' stated intent in enacting Section 1563(e) of the Miscellaneous Trade and Technical Corrections Act of 2004,[17] by which Customs sought to require that Customs "liquidate future drawback claims within a specified period of time as U.S. Customs already does for merchandise entered for consumption."[18] Imports for consumption are deemed liquidated one year after filing, subject to extensions bringing the liquidation period to no more than four years. 19 U.S.C. § 1504(a)(1); 19 U.S.C. § 1504(b). Congress intended the same time limits to apply to drawback claims, and articulated no exceptions to this rule.[19]

---

[17] Pub. L. 108-429, 118 Stat. 2434 (2004).

[18] S. Rep. 108-28 at p. 172-173.

[19] The government's argument appears to be offered in support of the shambolic operation of a Customs drawback processing organization which has simply chosen to disregard the four-year statutory limitation on liquidation. *See* U.S. Gov't Accountability Office, GAO 20-182, Customs and Border Protection: Risk Management for Tariff Refunds Should be Improved (2019), at 24 (noting that Customs has

There simply is no "second track" of liquidation procedures existing outside of 19 U.S.C. § 1504(a)(2).

Nor can this Court sustain the Trade Court's observation that "[a]ny application of subparagraph (A) that ignores the status of the underlying consumption entries renders the safeguards of subparagraph (B) a nullity." Appx16. Simply put, 19 U.S.C. § 1504(a)(2)(B) does not provide any "safeguards." It in no way limits the clear command in 19 U.S.C. § 1504(a)(2)(A) that a drawback claim not liquidated within one year of its filing is deemed liquidated on its anniversary. Rather than providing a "safeguard," § 1504(a)(2)(B) provides an alternative—*i.e.,* a way to obtain a deemed liquidation before the first anniversary of claim filing or after the first anniversary, if the liquidation of the claim has been extended pursuant to 19 U.S.C. § 1504(b). The law's intent is not to limit "deemed liquidations" of drawback claims, but to expand the opportunity to obtain them.

---

not properly managed its workload and reporting that "The largest Drawback Centers expect their backlog of old claims will take about 5 years to work through"). The expectation that Drawback Centers will take five years to work through their backlog of claims when, since 2004, the law has commanded claims to be resolved in no more than four years, indicates that Customs is simply ignoring the law in this area.

Under the government's logic, drawback claimants wishing to have the statutory time limitations applied to their claims would best be served by filing 19 U.S.C. § 1504(a)(2)(B) applications for deemed liquidations as soon as they file their claims. This would overload a completely overstressed system.

The government's notion that an import entry designated in a drawback claim must be "liquidated and final" in order for a deemed liquidation to occur under § 1504(a)(2)(A) is belied by its admission that a deemed liquidation of a drawback claim will occur under § 1504(a)(2)(B), even where import entries are not liquidated, much less "liquidated and final."

The Trade Court's decision also creates two statutory absurdities/anomalies. First, it suggests that a drawback claim may sail past the one-year liquidation period in § 1504(a)(2)(A) in the absence of any "extension of liquidation," a clear contravention of the one-year liquidation rule spelled out in that statute. Second, if a drawback claim may surpass the one-year limitation on liquidation, it is not subject to the four-year outside limit on liquidation set out in § 1504(b), which only applies to entries and drawback claims whose initial liquidation was extended.

The Trade Court's opinion, if allowed to stand, would create a very large class of drawback claims which evade the one-year liquidation time limit without the benefit of a liquidation extension, and thereby evade the intended four-year outside time limit on liquidation. It effectively creates a class of drawback claims with **no** limitation on liquidation—precisely the *status quo ante* situation the Congress sought to end in the Miscellaneous Trade and Technical Corrections Act of 2004.

### III. In Making Liquidation of Drawback Claims a Statutory Concept, Congress Intentionally Omitted the Concept of "Liquidated and Final" from 19 U.S.C. § 1504(a)(2)(A).

Prior to 2004, "liquidation" of a drawback claim was a purely regulatory concept. Section 1563(e) of the Miscellaneous Trade and Technical Corrections Act of 2004, for the first time, made the liquidation of drawback claims a matter of statute, and provided for "deemed liquidation" of such claims one year after filing. Notably, in crafting 19 U.S.C. § 1504(a)(2)(A), Congress declined to import the concept of "liquidated and final" import entries from the Customs regulations in existence at the time.

Prior to 2004, Section 190.81(a) of the Customs Regulation, 19 C.F.R. § 190.81(a) (2003 ed.) provided:

> **§ 191.81 Liquidation.** (a) Time of liquidation. Drawback entries may be liquidated after:
>
> (1) Liquidation of the import entry becomes final; or
>
> (2) Deposit of estimated duties on the imported merchandise and before liquidation of the import entry

Notably, in enacting 19 U.S.C. § 1504(a)(1), Congress did not include the regulatory phrase "liquidation of the import entry becomes final." In § 1504(a)(2)(A), Congress established a "one-year deemed liquidation" rule which, on its face, applies to *all* drawback claims, without regard to the status of the import entries denominated

therein. Thus, absent extension in accordance with 19 U.S.C. § 1504(b), *every* draw-back claim will be deemed liquidated as filed on its one-year anniversary.

Had 19 U.S.C. § 1504(a)(2)(A) contained the "final liquidation" language, then the government's argument would be plausible. But the language was not transferred from the regulation to the statute. It is a central canon of statutory construction that Congress acts intentionally when it omits language included elsewhere. *Dept. of Homeland Sec. v. McLean*, 574 U.S. 383, 391-32 (2015); *Dig. Realty Trust v. Somers,* 583 U.S. 149, 161-62 (2018). Equally clear is that a court should refrain from inserting language into a statute even if it suspected that Congress inadvertently omitted such language. *Lamie v. United States Tr.*, 540 U.S. 526, 538 (2004); *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1080-81 (9th Cir. 2005).

Indeed, this Court has noted, in interpreting a statute, that "Congress did not include the language suggested by [appellant] and therefore this Court must rely on the plain language of the statute as enacted by Congress." *Energy East Corp. v. United States*, 645 F3d 1358, 1362 (Fed. Cir. 2011), citing *Jones v. Bock*, 549 U.S. 199, 217 (2007).[20]

---

[20] Where Congress declines to import language from an agency's prior regulation into a statute, a reviewing court should not be in the business of adding words back into the statute. *George v. McDonough*, 596 U.S. 740, 761 (2022) (Gorsuch, Breyer and Sotomayor, dissenting).

In enacting 19 U.S.C. § 1504(a)(2)(A), Congress took away Customs' regulatory discretion to determine when drawback claims should be liquidated (a situation which led to the backlogs and delays noted in the statute's legislative history).[21] It instead imposed a strict one-year deadline for liquidation of all drawback claims, subject to up to three one-year extensions. The government's behavior in this case, and its litigating position before this Court, completely disregards the statutory command, and seek pretends § 1504(a)(2)(A) was never enacted. This is not the law.

## CONCLUSION

For the reasons presented herein, and in our Principal Brief, Plaintiff-Appellant respectfully request that this Court vacate the Opinion and Judgment of the Trade Court, and remand this matter for further proceedings consistent with this Court's opinion.

---

[21] S. Rep. 108-28 (2003) at p.172-173.

Respectfully submitted.

 /s/ John M. Peterson
John M. Peterson
  *Counsel of Record*
Patrick B. Klein
NEVILLE PETERSON LLP
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Ave, Ste. 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

*Attorneys for Plaintiff-Appellant*
*Performance Additives LLC*

December 13, 2024

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing Reply Brief of Performance Additives LLC complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules. It was prepared using a proportionally-spaced typeface and includes 4,710 words.

   /s/ Patrick B. Klein   
        Patrick B. Klein

December 13, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of December 2024, I electronically filed the foregoing Reply Brief of Performance Additives LLC, with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

                                                       /s/ Patrick B. Klein
                                                          Patrick B. Klein

December 13, 2024