**24-2059**

# United States Court of Appeals
# for the Federal Circuit

---

**PERFORMANCE ADDITITVES, LLC,**

*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**

*Defendant-Appellee.*

---

On Appeal from the United States Court of International Trade,
in No. 1:22-cv-00044-JAR, Senior Judge Jane A. Restani

---

**COMBINED PETITION FOR REHEARING AND
REHEARING *EN BANC* OF APPELLANT PERFORMANCE
ADDITIVES, LLC**

---

John M. Peterson
*Counsel of Record*
Patrick B. Klein
Sanzida Talukder
NEVILLE PETERSON LLP
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Ave, Suite 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

April 10, 2026

FORM 9. Certificate of Interest                                    Form 9 (p. 1)
                                                                   March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-2059

**Short Case Caption** Performance Additives, LLC v. US

**Filing Party/Entity** Performance Additives, LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/16/2024                    Signature:  /s/ John M. Peterson

                                    Name:       John M. Peterson

FORM 9. Certificate of Interest                                           Form 9 (p. 2)
                                                                         March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Performance Additives, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable     ☐ Additional pages attached

| | | |
|---|---|---|
| John P. Donohue<br>Neville Peterson LLP | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)   ☐ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable     ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTEREST ........................................................................ i
TABLE OF AUTHORITIES ........................................................................... iii
COUNSEL STATEMENT ............................................................................... iv
POINTS OF LAW OR FACT BELIEVED TO BE MISAPPREHENDED OR
  OVERLOOKED ..................................................................................... iv

INTRODUCTION ............................................................................................ 1
SUMMARY OF FACTS .................................................................................. 1
RELEVANT STATUTES ................................................................................ 4
ARGUMENT ................................................................................................... 5

I. The Merits Panel Misinterpreted *Atl. Richfield Co. v. Christian* in Reaching its Decision. .................................................................................. 5

  A. The Merits Panel Improperly Determined the Phrase "Estimated Duties" is not limited to unliquidated duties. ......................................... 8

  B. Even if the Statutes Had Been in Conflict, the Merits Panel's Decision Improperly Altered the Scope of the Statutes Being Compared ..................................................................................... 12

CONCLUSION .............................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. Attorney General of the United States*, 153 F.4th 342 (3d. Cir. 2025).................................................................................................15

*Atlantic Richfield Co. v. Christian*, 590 U.S. 1 (2020)............................. 1, 5, 12, 13

*Clearcorrect Operating LLC v. Int'l Tr. Comm'n.*, 810 F.3d 1283 (Fed. Cir. 2015)....................................................................................................7

*Cyan Inc. v. Beaver County Employees Retirement Fund*, 583 U.S. 416 (2018). ................................................................................................5

*Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020) ....................................14

*NLRB v. SW General, Inc.*, 580 U. S. 288 (2017) ............................... 1, 6, 13

*Performance Additives, LLC v. United States*, 2026 U.S. App. LEXIS 5360* (2026). .......................................................................................1

*Stein, Hall & Co. v. United States*, 11 Ct. Cust. 137 (1921). ..................10

*SW Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022). ................................9

*Thaler v. Vidal*, 43 F.4th 1207 (Fed. Cir. 2022) ...................................9

*Thomas v. Reeves*, 961 F.3d 800 (3d. Cir. 2020). ................................14

*Travenol Labs, Inc. v. United States*, 118 F.3d 749 (Fed. Cir. 1997)..........9

*U.S. Tsubaki v. United States.* 512 F.3d 1332 (Fed. Cir. 2008) ...............10

*Util. Air. Regulatory Grp. v. EPA*, 134 S. Ct. 2427 (2014).....................7

**Statutes**

19 U.S.C. § 1313 ....................................................................1

19 U.S.C. § 1500......................................................................9, 13

19 U.S.C. § 1501 ......................................................................9

19 U.S.C. § 1504 ................................................................ passim

28 U.S.C. § 1581 .....................................................................7

**Regulations**

19 C.F.R. § 141.101 .................................................................10

19 C.F.R. § 159.1 ...................................................................11

19 C.F.R. § 159.38 ..................................................................11

19 C.F.R. § 159.6 ...................................................................10

9 C.F.R. § 159.58 ...................................................................11

iii

**COUNSEL STATEMENT**

In accordance with Rule 40(b)(1) of the Federal Rules of Appellate Procedure, based on my professional judgment:

- The panel decision is contrary to the decisions of the United States Supreme Court in *Atlantic Richfield Co. v. Christian*, 590 U.S. 1 (2020) and *NLRB v. SW General, Inc.*, 580 U. S. 288 (2017).

- The panel decision is also contrary to numerous decisions of this Court and its predecessors, including but not limited to *Travenol Labs, Inc. v. United States*, 118 F.3d 749 (Fed. Cir. 1997); *U.S. Tsubaki v. United States.* 512 F. 3d 1332, 1335 (Fed. Cir. 2008); and *Stein, Hall & Co. v. United States,* 11 Ct. Cust. 137.

　　　　　　　　　　　　/s/ John M. Peterson
　　　　　　　　　　　　John M. Peterson

**POINTS OF LAW OR FACT BELIEVED TO BE
MISAPPREHENDED OR OVERLOOKED**

Plaintiff-Appellant contends that the Merits Panel misapprehended the statute by incorrectly treating 19 U.S.C. §§ 1504 (a)(2)(A) and (B) as conflicting, and by misapplying Supreme Court precedent imposing limitations not found in the statutory text. Plaintiff-Appellant further contends that the Merits Panel overlooked that all underlying import entries were already liquidated, meaning subsection 1504(a)(2)(B) was inapplicable, and thus the drawback claim should have been deemed liquidated by operation of law under operation of § 1504(a)(2)(A).

iv

## **INTRODUCTION**

Pursuant to Federal Circuit and Federal Rule of Appellate Procedure 40, plaintiff-Appellant Performance Additives, LLC respectfully submits this Combined Petition for Panel Rehearing and En Banc Rehearing of this Court's decision in *Performance Additives, LLC v. United States*, 2026 U.S. App. LEXIS 5360* (February 24, 2026). For the reasons submitted herein, Appellant submits that the Merits Panel's determination conflicts with several decisions of the United States Supreme Court, including *Atlantic Richfield Co. v. Christian*, 590 U.S. 1 (2020) and *NLRB v. SW General, Inc.*, 580 U. S. 288 (2017), and conflicts with numerous decisions of this Court and its predecessors. In the process, the Panel decision improperly modifies the scope and operation of the statutes under consideration, 19 U.S.C. §§ 1504(a)(2)(A) and 1504(a)(2)(B), and yields a result inconsistent with clearly expressed legislative intent.

## **SUMMARY OF FACTS**

The facts of this first impression case are not in dispute. Performance Additives filed drawback claim B10-0004498-1 on March 10, 2020, seeking payment of $1,328,589.84 in duty drawback under 19 U.S.C. § 1313(p). The claim designated some forty-eight (48) import entries of polymers as the basis for the drawback claim. Customs did not liquidate the drawback claim within one-year of its filing, nor did

it extend the period for liquidation pursuant to 19 U.S.C. § 1504(b), so that the claim was "deemed liquidated" as filed as of the entry date.

On May 14, 2021, after the date the "deemed liquidation" occurred, Customs purported to liquidate Performance Additives' claim "no drawback." Appx27. Plaintiff protested this liquidation as untimely and was barred by the previous "deemed liquidation" of its drawback claim. After Customs denied Performance Additives' protest, the company timely challenged the denial before the United States Court of International Trade. When that Court upheld the denial as to Drawback Claim B10-0004498-1 Performance Additives commenced this appeal.

As of the one-year anniversary of the date of filing of the drawback claim, i.e., March 10, 2021, all of the 48 import entries "designated" in drawback claim B10-0004498-1 had been "liquidated" by Customs. Appx11. However, some of the import entries had not been liquidated for at least 180 days. *Id.* The Trade Court ruled that Appellant's drawback claim had not been "deemed liquidated" pursuant to 19 U.S.C. § 1504(a)(2)(A), because some of the import entries were not "liquidated and final," Appx15-Appx16, drawing on the "liquidated and final" requirement from 19 U.S.C. § 1504(a)(2)(B). This statute prescribes a process for claimants to seek payment on the basis of *unliquidated* import entries, based on the deposit of *"estimated"* duties — a process which the Trade Court admitted did not apply to Appellant's

2

drawback claim. Appx13. It held that 19 U.S.C. § 1504(a)(2)(B) constituted a general exception to the rule of "deemed liquidation" after one year as set out in 19 U.S.C. § 1504(a)(2)(A).

In this case, the Merits Panel upheld the denial of Appellant's protest on the same "general exception" principle, but also imposed alterations on the scope and operation of the statutes at issue. In particular, the Merits Panel held that the procedure set out in Section 504(a)(2)(A) could not be used during the first year after a drawback claim is filed — a limitation nowhere stated in the statute. In addition, the Merits Panel adopted a new definition of the term "estimated duties" which it applied to 19 U.S.C. § 1504(a)(2)(B) *only,* stating that duties remain "estimated" until 180 days after liquidation occurs.

Modifying the operation of the analyzed statutes this way indicates that the Merits Panel's reasoning was unsound. As discussed herein, this resulted from the Merits Panel's reading of the phrase in 19 U.S.C. § 1504(a)(2)(A)'s deemed liquidation provision "[e]xcept as provided in subparagraphs (B) and (C) of this section" as resolving a conflict between subparagraphs (A) and (B). As discussed herein, *under the facts of this case*, those subparagraphs were not in conflict.

3

## RELEVANT STATUTES

This appeal involves the proper interpretation of 19 U.S.C. § 1504(a)(2)(A) and § 1504(a)(2)(B), and the relationship between them. These statutes provide as follows:

**19 U.S.C. § 1504 – Limitation on Liquidation**

\*\*\*

**(2) Entries or claims for drawback**

**(A)  In general**

> Except as provided in subparagraph (B) or (C), unless an entry or claim for drawback is extended under subsection (b) or suspended as required by statute or court order, an entry or claim for drawback not liquidated within 1 year from the date of entry or claim shall be deemed liquidated at the drawback amount asserted by the claimant or claim. Notwith-standing section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

**(B)  Unliquidated imports**

> An entry or claim for drawback whose designated or identified import entries have not been liquidated and become final within the 1-year pe-riod described in subparagraph (A), or within the 1-year period de-scribed in subparagraph (C), shall be deemed liquidated upon the de-posit of estimated duties on the unliquidated imported merchandise, and upon the filing with the Customs Service of a written request for the liquidation of the drawback entry or claim. Such a request must include a waiver of any right to payment or refund under other provisions of law. The Secretary of the Treasury shall prescribe any necessary regu-lations for the purpose of administering this subparagraph.[1]

---

[1] 19 U.S.C. § 1504(a)(2)(C) is a transitional provision which is no longer operative, and which is not involved in this appeal.

4

## <u>ARGUMENT</u>

**I.    The Merits Panel Misinterpreted *Atl. Richfield Co. v. Christian* in Reaching its Decision.**

The Merits Panel's holding rests on the notion that where the term "except as" appears in a statute, followed by a cross-reference," the "except as" language operates to resolve conflicts between the statutes. It stated:

> The Supreme Court has noted that "[t]housands of statutory provisions use the phrase 'except as provided in . . . ' followed by a cross-reference in order to indicate that one rule should prevail over another in any circumstance in which the two conflict." *Atl. Richfield Co. v. Christian,* 590 U.S. 1, 16 (2020)(citation omitted).[2]

2026 U.S. App. LEXIS 5360* at 8-9. Based on this well-known rule of interpretation, the Panel concluded that the special rule in 19 U.S.C. § 1504(a)(2)(B) overrode and restricted the clear command of 19 U.S.C. § 1504(a)(2)(A) which requires, without condition, that absent extension of liquidation by Customs "an entry or claim for drawback not liquidated within 1 year from the date of entry or claim shall be deemed liquidated at the drawback amount asserted by the claimant or claim."

This presumes however, that the instant case is a "circumstance in which the two [statutory provisions] conflict." *Atlantic Richfield Co. v. Christian,* 590 U.S. 1, 16 (2020). The Supreme Court in *Atlantic Richfield,* cautioned immediately after the above-referenced holding that "[s]uch clauses explain what happens in the case of a

---

[2] *See also Cyan Inc. v. Beaver County Employees Retirement Fund*, 583 U.S. 416, 428 (2018).

5

clash, **but they do not otherwise expand or contract the scope of their provisions by implication**". 590 U.S. at 16, (emphasis added), citing *NLRB v. SW General, Inc.*, 580 U. S. 288, 302 (2017) (explaining the same principle for "notwithstanding" clauses).

The Merits Panel decision in this case violates this principle in two ways. First, it expands the scope of 19 U.S.C. § 1504(a)(2)(A) by adding words to the statute, redefining the word "liquidated" in that subsection to mean "liquidated and final," injecting into the statute words that Congress did not include. Second, it contracts the operation of 19 U.S.C. § 1504(a)(2)(B) by indicating, gratuitously, that the provision may not be invoked within the first year after a drawback claim is filed — a limitation Congress did not impose.[3]

On top of that, the Merits Panel contravenes the well-known rule of statutory interpretation that, absent a clearly-expressed Congressional intent, words in a statute are to be given the same meaning throughout the statute. Specifically, the Panel disregards the well-established distinction between "estimated duties" and "liquidated duties" to provide — that for purposes only of 19 U.S.C. § 1504(a)(2)(B), the

---

[3] "We hold, in our de novo review of the statute, subparagraph (B) cannot be triggered until at least the end of the 1-year period set out in subparagraph (A)" *Performance Additives, LLC v. United States*, 2026 U.S. App. LEXIS 5360* at 10. There is absolutely no language in the statute which supports the creation of a one-year limitation.

6

term "estimated duties" describes not only duties deposited on unliquidated entries, but entries which are liquidated, but for which the 180-day protest period has not expired. *See Performance Additives, LLC v. United States*, 2026 U.S. App. LEXIS 5360* at FN8.[4] As this Court noted in *Clearcorrect Operating LLC v. Int'l Tr. Comm'n.*, 810 F.3d 1283 (Fed. Cir. 2015), "[a]s when defining words in a statute, their ultimate meaning should remain consistent with the remainder of the statute as a term's meaning must be 'compatible with the rest of the law[,]'" quoting *Util. Air. Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2442 (2014). The Merits Panel's decision discards this essential canon of statutory construction, and verges on judicial legislation.

All of these things suggest that the Merits Panel's decision is flawed, and should be reconsidered.

---

[4] *See Performance Additives, LLC v. United States*, 2026 U.S. App. LEXIS 5360* at 13: "We interpreted (a)(2)(B)'s reference to 'estimated duties' to refer to non-final import duties. Even when they are solely liquidated, they are also non-final; hence, they could only be estimated."

The Merits Panel indicates that "Our interpretation of 'estimated duties' in subparagraph (B) is limited to that subparagraph." *Id.* at FN8

Of course absent any such limitation, the duties assessed on any entry which is "finally" liquidated and protested, and brought to the Court of International Trade pursuant to 28 U.S.C. § 1581(a) would be "estimated" duties.

**A.    The Merits Panel Improperly Determined the Phrase "Estimated Duties" is not limited to unliquidated duties.**

The initial point of inquiry is whether, under the specific facts of this case, the two statutes at issue — 19 U.S.C. §§ 1504(a)(2)(A) and 1504(a)(2)(B) – were, in fact "in conflict." Performance Additives suggests they are not.

Section 504(a)(2)(A) indicates that, in the absence of a CBP extension or court-ordered suspension "an entry or claim for drawback not liquidated within 1 year from the date of entry" shall be deemed liquidated on the anniversary of its filing. The statute does not refer at all to the liquidation status of the underlying import entries designated in the drawback claim.

The next inquiry is whether section 504(a)(2)(B) conflicts with section 504(a)(2)(A) *under the facts of this case*. Appellant submits that it does not. According to its title, section 504(a)(2)(B) deals with "unliquidated imports."[5] That situation did not apply to Performance Additives in this case. All of the imports in the

---

[5] If, as the Merits Panel suggests, the duties paid on entries which have not been liquidated for 180 days are "estimated" duties, *for purposes of 19 U.S.C. § 1504(a)(2)(B)*, would it follow that the imports associated with those duties are "unliquidated imports" *for purposes of that same subsection?* Would Performance Additives have had the opportunity to invoke § 1504(a)(2)(B) procedure, even though all the import entries designated in its drawback claim were liquidated?

The difference between "liquidated" and "unliquidated" imports is clearly set out in statute, *see* 19 U.S.C. § 1500. When Congress used the term "unliquidated imports" in 19 U.S.C. § 1504(a)(2)(B), it must be presumed to have known the difference. Judges presume that Congress uses its words carefully, and a court may not "elevate vague invocations of statutory purpose over the words Congress chose."

drawback claim at bar had been liquidated by Customs in accordance with 19 U.S.C. § 1500 prior to the first anniversary of the filing of the drawback claim. Subsection (B), on the other hand, addresses situations where "designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A) . . .."

Two conditions are presented here. The designated import entries must "have not been liquidated", and the claims must not have "become final." Thus, one of the requirements for application of subsection (B) is that the designated import entries *not have been liquidated*. This is evident from the statute's requirement that the party seeking to invoke subsection (B) must make "deposit of *estimated* duties on the *unliquidated* imported merchandise" and request payment of drawback on the basis of such *estimated* duties. (Emphasis added).

The distinction between "estimated duties" (duties deposited on entries not yet liquidated) and "liquidated duties" imposed by Customs upon statutory liquidation of the entry, *see* 19 U.S.C. § 1501, is long-established in Customs law, and by this Court. *See, e.g., Travenol Labs, Inc. v. United States*, 118 F.3d 749, 752-753 (Fed. Cir. 1997) ("An importer is required to deposit estimated duties with Customs

---

*Thaler v. Vidal*, 43 F.4th 1207, 1212 (Fed. Cir. 2022), quoting *SW Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1792-93 (2022).

at the time of importation"). 19 C.F.R. § 141.101 (1996). At some later time, Customs reviews the entry and makes its final determination as to whether the amount of duty deposited is correct - i.e., Customs liquidates the entry. *See* 19 C.F.R. §§ 159.0-159.12 (1996)"). *See also U.S. Tsubaki v. United States.* 512 F.3d 1332, 1335 (Fed. Cir. 2008) ("In *Travenol*, we noted that 'Customs does not determine whether there has been an overpayment or underpayment of estimated duties until it liquidates or reliquidates an entry.' Because liquidation or reliquidation determines whether the importer has overpaid the applicable duties, we held that liquidation or reliquidation is the appropriate triggering event for the statutory liability for interest on those payments. *Travenol*, 118 F.3d at 753"). The distinction between "estimated duties" and "liquidated duties" has been understood by the Courts, including this Court's predecessors, for more than a century. *See Stein, Hall & Co. v. United States*, 11 Ct. Cust. 137, 138 (1921).

These distinctions are also codified in Customs' regulations. *See, e.g.,* 19 C.F.R. § 159.6 Difference Between Liquidated Duties and Estimated Duties;[6] 19

---

[6] *See*, in particular, 19 C.F.R. § 159.6(c):

Difference of $20 or more collected or refunded. If there is a difference of $20 or more between the duties, fees, taxes, and interest assessed in the liquidation of an entry and the total estimated duties, fees, and taxes deposited, or between the total duties, fees, taxes, and interest assessed in the reliquidation of an entry and those assessed in the prior liquidation, the entry will be endorsed to show the difference and bills or refunds will be issued.

C.F.R. § 159.38 Rates for Estimated Duties; 19 C.F.R. § 159.58 (discussing estimated duties in the context of entries subject to antidumping and countervailing duty assessments).[7]

These authorities preclude the Merits Panel's flawed attempt to expand the definition of "unliquidated" entries in 19 U.S.C. § 1504(a)(2)(B) to include entries which **are** "liquidated," but for which the reliquidation or protest period has not yet expired. The statute's specific, repeated references to deposit of "estimated" duties prohibit the Merits Panel's effort to expand subsection (B) to cover situations involving drawback claims featuring import entries which are liquidated but for which these periods have not expired. The Merits Panel perceived a conflict between §§1504(a)(2)(A) and 1504(a)(2)(B), which, *under the facts of this case*, did not exist. It invoked the "[e]xcept as provided by subparagraph (B)" language of the former statute when it simply did not apply.

This case can be resolved purely by applying 19 U.S.C. § 1504(a)(2)(A) by its clear terms. Appellant's *drawback entry* was unliquidated on the first anniversary of its filing. Customs admittedly did not extend the liquidation. There were no

---

[7] 19 C.F.R. § 159.1, which defines "liquidation":

> Liquidation means the **final** computation or ascertainment of duties on entries for consumption or drawback entries.

(Emphasis added). While liquidated entries may be reliquidated or protested, Customs' own regulations recognize liquidation as a "final" computation or ascertainment of duties on import and drawback entries.

11

"unliquidated imports" or "estimated duties" involved in plaintiff's claim. The only correct conclusion is that, by operation of 19 U.S.C. § 1504(a)(2)(A), plaintiff's drawback entry liquidated as entered on the anniversary date of its filing.

It follows that, under the specific facts of this case, 19 U.S.C. §§ 1504(a)(2)(A) and 1504 (a)(2)(B) were not "in conflict." While the Merits Panel turned to the Supreme Court's *Atlantic Richfield* decision to decide the appeal, it was inapposite, because there was in fact no conflict between subsections (A) and (B) to be resolved. There were no "unliquidated imports" duties upon which Performance Additives could have initiated a request for liquidation under 19 U.S.C. § 1504(a)(2)(B). The "exception" in Section 504(a)(2)(B) to the requirement of deemed liquidation under Section 504(a)(2)(A) simply did not exist under the circumstances of this case. The appeal should have been decided solely on the basis of Section 504(a)(2)(A). Liquidation of Performance Additives' subject drawback claim was not extended before the claim's one-year filing anniversary. It liquidated by operation of law on that anniversary.

**B.    Even if the Statutes Had Been in Conflict, the Merits Panel's Decision Improperly Altered the Scope of the Statutes Being Compared.**

Had there been a conflict, the interpretation adopted by the Merits Panel still violated the rule set out by the Supreme Court in *Atlantic Richfield, supra,* that "except as" clauses "explain what happens in the case of a clash, but they do not otherwise expand or contract the scope of their provisions by implication." 590 U.S. at

16. The Merits Panel decision likewise violates the same principle set out by the Supreme Court in *NLRB v. SW General, Inc.*, 580 U. S. 288, 302 (2017).

First, the Merit Panel decision improperly limits the scope of 19 U.S.C. § 1504(a)(2)(A) by adding to the requirement that the drawback claim "[can]not [be] liquidated within 1 year from the date of entry or claim" to qualify for deemed liquidation to include the implied condition that the "import entries designated on the claim must be liquidated and final." However, subsection 1504(a)(2)(A) makes reference only to the liquidation status of the *drawback entry*, and contains no reference whatsoever to the import entries designated in the claim. By interpreting the "except as" clause in the statute to create an implied restriction on the operation of the deemed liquidation statute, the Panel decision contravenes the requirement set out in *Atlantic Richfield* and *NLRB, supra.*

The Merits Panel decision violates this rule a second time by expanding the definition of "unliquidated" duties in subsection 1504(a)(2)(B), to not only include duties deposited on unliquidated entries, but also to include liquidated duties on entries which have not been liquidated for at least 180 days, and which are theoretically subject to adjustment if a protest is filed. This interpretation also conflicts with the concept of liquidation defined in 19 U.S.C. § 1500, the regulatory definitions of "estimated" and "liquidated" duties, and multiple prior decisions of this Court and its predecessors.

13

Thus, the Merits Panel's decision has done precisely what the Supreme Court has twice said it may not do — interpret an "except as" clause in a statute as changing the scope of operation of the statutes in question. Even to the extent the Merits Panel claims it is engaging in "*de novo* interpretation" of the statutory language, the result of such interpretation conflicts with rulings of the Supreme Court.

Judges may not narrow a statutory provision's reach by inserting words Congress chose to omit. *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020); *see also Thomas v. Reeves*, 961 F.3d 800 (3d. Cir. 2020). The Panel's decision clearly does that with respect to Section 1504(a)(2)(A), inserting provisions which vastly limit the circumstances where "deemed liquidation" can occur, frustrating Congress' intent for speedy drawback liquidations, as set out in the Technical Corrections Act of 2002. It has also modified the reach of Section 1504(a)(2)(B), expanding the definition of "estimated duties" and possibly opening the door for drawback claimants to invoke that subsection's "deemed liquidation" application formula, intended to apply to "unliquidated imports."[8]

## CONCLUSION

The ordinary rule is that courts are bound by the ordinary meaning of the words Congress has chosen. *Abdullah v. Attorney General of the United States*, 153

---

[8] This depends on whether the Panel's expanded definition of "estimated duties" also expands its definition of "unliquidated" import entries.

F.4ᵗʰ 342 (3d. Cir. 2025). If the Merits Panel's decision in this appeal stands, that will no longer be true of 19 U.S.C. §§ 1504(a)(2)(A) and (B). The Merits Panel decision on February 24, 2026 should be reheard by the panel or *en banc.*

Respectfully submitted,

  /s/ John M. Peterson
John M. Peterson
  *Counsel of Record*
Patrick B. Klein
Sanzida Talukder
NEVILLE PETERSON LLP
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Ave, Suite 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

April 10, 2026

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of April, 2026, I electronically filed the forego-ing Petition for Rehearing and Rehearing En Banc of Appellant Performance Addi-tives, LLC, with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.


                    /s/ John M. Peterson
                    John M. Peterson


April 10, 2026

## <u>CERTIFICATE OF COMPLIANCE WITH</u><br><u>TYPE-VOLUME LIMITATIONS</u>

I hereby certify that the foregoing Rehearing and Rehearing En Banc of Appellant

Performance Additives, LLC, complies with the relevant type-volume limitation of

the Federal Rules of Appellate Procedure and Federal Circuit Rules. It was prepared

using a proportionally-spaced typeface and includes 3,617 words.


   <u>/s/ John M. Peterson</u><br>
John M. Peterson


April 10, 2026

# **ADDENDUM**

# United States Court of Appeals for the Federal Circuit

---

**PERFORMANCE ADDITIVES, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-2059

---

Appeal from the United States Court of International Trade in No. 1:22-cv-00044-JAR, Senior Judge Jane A. Restani.

---

Decided: February 24, 2026

---

JOHN M. PETERSON, Neville Peterson LLP, New York, NY, argued for plaintiff-appellant. Also represented by PATRICK KLEIN; RICHARD F. O'NEILL, Seattle, WA.

ALEXANDER J. VANDERWEIDE, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, JUSTIN REINHART MILLER; ALEXANDRA KHREBTUKOVA, YELENA SLEPAK, Office of the Assistant Chief Counsel, United States Customs and Border

2                    PERFORMANCE ADDITIVES, LLC v. US

Protection, United States Department of Homeland Security, New York, NY.

————————————

Before PROST, WALLACH, and STARK, *Circuit Judges*.

WALLACH, *Circuit Judge*.

Plaintiff-Appellant, Performance Additives, LLC, (hereinafter, "Performance") appeals from the final judgment of the U.S. Court of International Trade insofar as it denied judgment for Performance's drawback claim entry BI00004498-1.[1] This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

This appeal requires us to perform statutory interpretation to determine the applicability of 19 U.S.C. § 1504(a)(2)*(A)* and § 1504(a)(2)*(B)* to Performance's drawback claim. Did Customs & Border Protection (hereinafter, "Customs") act lawfully on April 30, 2021, when it liquidated Performance's drawback claim at the amount of zero drawback; or, as Performance argues, was its drawback claim "deemed" liquidated by subparagraph (A) at Performance's asserted rate, on March 10, 2021?

We hold that under the plain text of the statute, subparagraph (A) does not apply when the conditions set forth in (B) are present. Here, the conditions of § 1504(a)(2)*(B)* were present because, inter alia, the underlying import entries were not yet final. Thus, Performance's drawback claim was not automatically liquidated under § 1504(a)(2)*(A)*. Given there was not a

————————————

[1] The Court of International Trade Judgement is in the record at Appx0001, and the Decision is in the record at Appx0002–20 and reported as *Performance Additives, LLC v. United States*, 705 F. Supp. 3d 1385 (Ct. Int'l Trade 2024).

PERFORMANCE ADDITIVES, LLC v. US                3

"deemed" liquidation, Customs did not act unlawfully by liquidating the drawback claim.[2]

Therefore, we affirm.

## I.   BACKGROUND[3]

### A.

#### 1.

Performance filed a drawback claim on March 10, 2020. Appx0003.   It was a claim for petroleum derivatives substitution drawback and identified forty-eight consumption entries for the claimed recovery of $1,328,589.84 under 19 U.S.C. § 1313(p).   Appx0002–3; Opening Br. 2; Response Br. 8 & n.2.

---

[2]  Performance's contention at the Court of International Trade, and here, does not concern whether Customs was correct on the merits in determining that Performance was not entitled to any drawback on its claim. Rather, Performance argues its claim had already been deemed liquidated (on March 10, 2021) by operation of law before Customs determined that the claim was not eligible for drawback.   For that reason, Performance argues, Customs erred as a matter of law.  Because that is the sole issue on appeal, to focus our discussion, we assume without deciding that Customs was otherwise correct on the merits.

[3] Performance asserts that the facts are undisputed. Opening Br. 2; Opening Br. 12.  As explained in oral argument, the Defendant-Appellee the United States (hereinafter, "Government") agreed the facts are undisputed.   Oral Arg. at 1:16–34, 17:19–51, 23:22–38 (available at: https://www.cafc.uscourts.gov/oral-arguments/24-2059_01082026.mp3).

4    PERFORMANCE ADDITIVES, LLC v. US

2.

"Drawback" is defined in relevant part by Customs regulations as "the refund or remission, in whole or in part, of a customs duty, fee or internal revenue tax which was imposed on imported merchandise under Federal law because of its importation . . . ." 19 C.F.R. § 191.2(i). In general, under the statute, Customs is required to provide a drawback of up to 99% of the duties, fees, or taxes imposed on imported merchandise if that merchandise (or a commercially interchangeable substitute) is subsequently exported, used in the manufacture of articles which are subsequently exported, or when certain other specified conditions are met. 19 U.S.C. § 1313; *see, e.g.*, *Shell Oil Co. v. United States*, 688 F.3d 1376, 1379 (Fed. Cir. 2012); Appx0004; Response Br. 1. Drawbacks "do not compensate for duty overpayments, but instead help enforce the United States' policy of 'encourag[ing] domestic manufacture of articles for export and . . . allow[ing] those articles to compete fairly in the world marketplace.'" *Shell Oil*, 688 F.3d at 1382 (alteration in original) (quoting *Hartog Foods Int'l, Inc. v. United States*, 291 F.3d 789, 793 (Fed. Cir. 2002)). "[D]rawbacks are a privilege, not a right." *Id.*

"Drawback claim" means "the drawback entry and related documents required by regulation which together constitute the request for drawback payment." 19 C.F.R. § 191.2(j). Given the nature of a drawback claim, there are two relevant sets of "entries." *Ford Motor Co. v. United States*, 44 F. Supp. 3d 1330, 1335 (Ct. Int'l Trade 2015). One is the "drawback entry," filed some time after importation, and which regulations define as: "the document containing a description of, and other required information concerning, the exported . . . article on which

drawback is claimed." 19 C.F.R. § 191.2(k).[4] The other is the "import entry" or entries (also known as the "consumption entry" or entries) filed with Customs at the time of importation. *Ford*, 44 F. Supp. 3d at 1335. Import entries underlie, and are covered by, drawback claims. *Id.*

Our recent decision in *Midwest-CBK* provided this background discussion of import entries.

> The importer of record for merchandise, with a few exceptions, is required to submit "entries" for that merchandise to [Customs]. *See* 19 U.S.C. § 1484(a). An "entry" means the "documentation or data required . . . to be filed with [Customs] . . . to secure the release of imported merchandise from [Customs'] custody, or the act of filing that documentation." 19 C.F.R. § 141.0a(a). Entries must undergo "liquidation" at the time merchandise is brought into the United States. *See* 19 U.S.C. § 1504. "Liquidation means the final computation or ascertainment of duties on entries . . . ." 19 C.F.R. § 159.1. . . . The usual rule is that, absent a proper extension of the liquidation deadline, "an entry of merchandise . . . not liquidated within 1 year . . . shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted by the importer

---

[4] "Technically, a 'drawback entry' is the form that a drawback claimant files to request payment of drawback, and is but one part of a 'drawback claim.'" *Ford*, 44 F. Supp. 3d at 1335 n.8 (quoting 19 C.F.R. § 191.2(j)–(k)). The terms "drawback claim" and "drawback entry" are sometimes used interchangeably. *See id.* For clarity, the term "drawback claim" is used generally throughout this Opinion.

6                                    PERFORMANCE ADDITIVES, LLC v. US

> of record."     19 U.S.C.  § 1504(a)(1).     The
> Secretary of the Treasury is permitted to
> extend the liquidation deadline if "the
> information    needed    for    the    proper
> appraisement or classification of the . . .
> merchandise . . . is not available to the
> Customs Service."     19  U.S.C.  § 1504(b)(1).
> Customs is permitted to obtain up to three
> such    one-year    extensions.         19 C.F.R.
> § 159.12(e).

*Midwest-CBK, LLC v. United States*, 163 F.4th 1365,
1368–69 (Fed. Cir. 2026) (footnote omitted).

3.

As of March 10, 2021, one year after Performance filed
its drawback claim, the import entries underlying the
drawback claim had all liquidated—the latest of which
were liquidated on November 27, 2020—but they were not
all "final."     Appx0027; Response Br. 8; Oral Arg.
at 4:45–5:12.    Generally, 180 days must pass before a
liquidated import entry is finalized, so the liquidation of
some of the designated import entries did not become final
until May 26, 2021 (i.e., 180 days from November 27, 2020).
Appx0027; Response Br. 14–15 (citing Appx0015).

On April 30, 2021, Customs liquidated the drawback
claim at the amount of zero drawback.    Response Br. 8;
Appx0013; Oral Arg. at 1:16–34, 17:19–51, 23:22–38.
Performance protested.    Appx0004.    Performance then
commenced the action at the Court of International Trade.
The Court of International Trade issued its Opinion and
Final Judgment on May 31, 2024, in which it denied
Performance's cross-motion for summary judgment,
granted the Government's cross-motion for summary
judgment, and denied judgment for drawback claim, entry
BI00004498-1.    Appx0019–20; Appx0001.    The Court of
International Trade concluded that because the import
entries underlying Performance's drawback claim "had not

been liquidated and become final within one year of the filing of the drawback claim, subparagraph (A) did not apply." Appx0016. Performance appealed to this Court.

## II.    STANDARD OF REVIEW

### A.

We review the Court of International Trade's decision granting summary judgment "without deference." *Ford Motor Co. v. United States*, 157 F.3d 849, 854 (Fed. Cir. 1998). We review its interpretation of statutes de novo. *Midwest-CBK*, 163 F.4th at 1369. We review factual findings of the Court of International Trade for clear error. *StoreWALL, LLC v. United States*, 644 F.3d 1358, 1362 (Fed. Cir. 2011).

## III.    DISCUSSION

### A.

#### 1.

To interpret the statute, we first turn to its text. *See* 2A Sutherland Statutes & Statutory Construction § 46:1 (7th ed. Nov. 2025 update) ("[T]he meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." (second alteration in original) (citation omitted)). The deemed liquidation of drawback claims under 19 U.S.C. § 1504(a)(2)*(A)* and § 1504(a)(2)*(B)* is at the core of this appeal, and so both those subparagraphs are quoted below.

**§1504. Limitation on liquidation**

**(a) Liquidation**

**. . . .**

**(2) Entries or claims for drawback**

**(A) In general**

8                    PERFORMANCE ADDITIVES, LLC v. US

> Except as provided in subparagraph (B) . . . , unless an entry or claim for drawback is extended under subsection (b) or suspended as required by statute or court order, an entry or claim for drawback not liquidated within 1 year from the date of entry or claim shall be deemed liquidated at the drawback amount asserted by the claimant or claim. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.
>
> **(B) Unliquidated imports**
>
> An entry or claim for drawback whose designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A), . . . shall be deemed liquidated upon the deposit of estimated duties on the unliquidated imported merchandise, and upon the filing with the Customs Service of a written request for the liquidation of the drawback entry or claim.  Such a request must include a waiver of any right to payment or refund under other provisions of law.  The Secretary of the Treasury shall prescribe any necessary regulations for the purpose of administering this subparagraph.

19 U.S.C. § 1504(a)(2)(A), (a)(2)(B).

Subparagraph (B) hinges on import entries. Subparagraph (B) applies to drawback claims with import entries that: one, "have not been liquidated," and, two, "have not . . . become final."  19 U.S.C. § 1504(a)(2)(B). When subparagraph (B) applies, a drawback claimant has steps they may take, upon which, the drawback claim shall

be deemed liquidated. These steps include: "the deposit of estimated duties on the unliquidated imported merchandise, and . . . the filing with the Customs Service of a written request for the liquidation of the drawback entry or claim." *Id.* It is undisputed Performance did not take all of the steps in subparagraph (B). *E.g.*, Oral Arg. at 8:15–32, 11:12–28; Response Br. 27 & n. 5; Appx0013.

2.

By its own terms, subparagraph (A) applies "[e]xcept" under certain conditions such as,[5] relevant here: when subparagraph (B)'s conditions are present. That subparagraph (B) would apply to the exclusion of subparagraph (A), flows from the text of the two subparagraphs. Certainly, § 1504(a)(2)(A) generally provides that a claim for drawback is deemed liquidated after one year of the claim date, but it does so by beginning that it operates: "Except as provided in subparagraph (B) . . . ." 19 U.S.C. § 1504(a)(2)(A); *see* Response Br. 13.

The Supreme Court has noted that "[t]housands of statutory provisions use the phrase 'except as provided in . . .' followed by a cross-reference in order to indicate that one rule should prevail over another in any circumstance in which the two conflict." *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 16 (2020) (citation omitted).

Nonetheless, Performance argues that subparagraph (A) is freestanding and independent from every other part of the statute. Performance asserts "there is no specific connector which would import the conditions

---

[5] Subparagraph (C) (i.e., 19 U.S.C. § 1504(a)(2)(C)), for drawback claims filed before December 3, 2004, and subsection (b) (i.e., 19 U.S.C. § 1504(b)), for the Secretary of the Treasury to extend for a limited time the period in which to liquidate, are not at issue in this appeal.

of 19 U.S.C. § 1504(a)(2)(B) into § 1504(a)(2)(A)." Reply Br. 13. That is mistaken in light of subparagraph (A)'s "[e]xcept" clause.

Performance argues that subparagraph (B) merely describes a non-exclusive alternative to subparagraph (A), but we disagree. Congress created "a two-track framework"—"two avenues for eligible unliquidated drawback claims to become deemed liquidated a year after their filing," but these are exclusive avenues. Response Br. at 11, 14. The text of the statute provides for circumstances—such as this one—in which one subparagraph prevails over the other. Performance's argument that subparagraph (B) could be non-exclusive to subparagraph (A) is premised on its mistaken argument that under (B), "deemed liquidation" may occur before the one-year period set out in § 1504(a)(2)(A). Opening Br. 17–18; Reply Br. 12; *see also* Reply Br. 16; Oral Arg. at 8:32–9:26. This is contradicted by the text of subparagraph (B) stating in relevant part: a "claim for drawback whose . . . import entries have not . . . become final *within the 1-year period described in subparagraph (A)*"—(i.e., within 1 year from the date of the drawback entry or claim)—"shall be deemed liquidated upon the" completion of certain steps with Customs. 19 U.S.C. § 1504(a)(2)(B) (emphasis added); *see also Ford*, 44 F. Supp. 3d at 1344.

We hold, in our de novo review of the statute, subparagraph (B) cannot be triggered until at least the end of the 1-year period set out in subparagraph (A). We also note that the Court of International Trade held the same, Appx0016 n.12 ("[T]he availability of the elective subparagraph (B) procedure cannot arise until after the close of the one-year period following filing of the claim."), and the Government argued the same, Oral Arg. at 21:49–23:12.

### B.

Policy supports this interpretation of the text.[6]  We agree with the way the Court of International Trade explained this policy point as: the interpretation "makes sense because Customs knows what drawback is owed on the consumption entries only when they are final." Appx0016.  The Government, too, argues that until import entries are final, "drawback claims covering those entries are not ripe for liquidation under subparagraph (A)." Response Br. 20.  By establishing drawback claims cannot be deemed liquidated at the drawback amount asserted by the claimant or claim until the designated import entries are first finalized, the interpretation dictated by the text avoids "refunding collected duties on the same import entries twice."  Response Br. 20–21; *see also* Oral Arg. at 15:33–16:20.

### C.

Applying this interpretation to the facts here, subparagraph (B) controlled Performance's drawback claim because the drawback claim met the statutory criteria for triggering that subparagraph—it was a drawback claim "whose designated or identified import entries ha[d] not been liquidated and become final within the 1-year period."  19 U.S.C. § 1504(a)(2)(B).  Indeed, it is undisputed Performance's drawback claim referenced import entries that were liquidated but not "final." Response Br. 14–15; Appx0027; Oral Arg. at 4:45–5:12.  As

---

[6] "Even formidable policy arguments do not overcome a clear statutory directive."  2B Sutherland Statutes & Statutory Construction § 56:1 n.14 (7th ed. Nov. 2025 update) (citation omitted).  However, here, the statute's text has a plain meaning that is also consistent with public policy.

a result, subparagraph (B) applied, and subparagraph (A) was not operative.

The record shows that from March 10, 2021, until the liquidation on April 30, 2021, the drawback claim was over one year old and had non-final import entries. The Government emphasizes that while Performance's drawback claims were not automatically deemed liquidated under (A) because they fell under (B), the statute provides steps Performance could have taken to liquidate the drawback claims but did not. Response Br. 27 & n.5. The Court of International Trade similarly noted that Performance had chosen not to satisfy the steps of subparagraph (B). Appx0011; Appx0014–15.

Performance could have followed the steps to cause the drawback claim to be "deemed liquidated" under (B). 19 U.S.C. § 1504(a)(2)(B); Appx0013. Performance argues that it could not have taken steps to deem liquidate the drawback claims under subparagraph (B) because all its claim's imported entries were liquidated. Opening Br. 18; Reply Br. 14; Oral Arg. at 25:57–26:11; *see also* Oral Arg. at 8:15–32, 11:12–28. Performance's contention that its liquidated-but-not-final import entries prevented it from taking advantage of subparagraph (B) because that subparagraph allegedly lost applicability when the underlying import entries became liquidated is based on two misreadings of the statute.

First, Performance mistakenly asserts that (a)(2)(B) can only be triggered when import entries were *neither* liquidated *nor* final. Reply Br. 14. This is contradicted by the text of the statute, which provides that subparagraph (B) may be invoked for an "entry or claim for drawback whose designated or identified import entries have not been liquidated *and* become final within the 1-year period described in subparagraph (A)." 19 U.S.C. § 1504(a)(2)(B) (emphasis added). That is, (B) governs when *either* of two conditions exist: that the import entries,

either, "have not been liquidated" or, "have not . . . become final."  19 U.S.C. § 1504(a)(2)(B).

Second, Performance mistakenly asserts that its reading can be inferred from (a)(2)(B) specifying that "an applicant for deemed liquidation must make payment of '*estimated duties*'"—which Performance says is "a concept relevant only to *unliquidated* entries."  Reply Br. 14 (first emphasis added).  We disagree.  Once an entry liquidates, related duties are still subject to protest.  *See* Reply Br. 14; *see also* Oral Arg. at 20:41–21:15.[7]  We interpret (a)(2)(B)'s reference to "estimated duties" to refer to non-final import duties.  Even when they are solely liquidated, they are also non-final; hence, they could only be estimated.[8]

---

[7] "Generally, the liquidation of an import entry becomes final and conclusive 180 days after the date that it liquidates, unless a protest is filed to challenge that liquidation (or some other protestable decision that CBP rendered on the entry)."  Response Br. 3 (citing 19 U.S.C. § 1514(a), (c)).

[8] Our interpretation of "estimated duties" in subparagraph (B) is limited to that subparagraph.  The Government points out that under 19 U.S.C. § 1505(a), estimated duties are required to be deposited on unliquidated imported merchandise at or near the time of entry of the merchandise.  Indeed, the Government contends that "estimated duties were deposited on the import entries subject to Performance's drawback claim, as is required for all import entries."  Response Br. 27.  Estimated duties will generally already be deposited before import entries are liquidated but not yet final, and before a drawback claim covering those entries becomes eligible for deemed liquidation under any provision of section 1504(a)(2).  Response Br. 24–25.

14                    PERFORMANCE ADDITIVES, LLC v. US

### D.

Particularly given our preceding analysis, relying on legislative history is unnecessary. Nevertheless, for completeness, we address the parties' dispute on whether the legislative history supports their position. Performance argues "[t]he law's intent is not to limit 'deemed liquidations' of drawback claims, but to expand the opportunity to obtain them." *E.g.*, Reply Br. 16. In essence, this is a maximalist reading of § 1504(a)(2)(A)— that § 1504(a)(2)(A) results in drawback claims being deemed liquidated "on the one-year anniversary of the claim's filing. Hard stop." Reply Br. 11; *see also* Reply Br. 6–7 (arguing subparagraph (B) "does not limit or condition" subparagraph (A) "in any way"). Performance asserts that drawback claims should automatically be deemed liquidated upon the one-year anniversary because, allegedly, the legislative history indicates that Congress intended to impose the same one-year limitation on liquidation of drawback claims that it had years earlier imposed on the liquidation of import entries in 19 U.S.C. § 1504(a)(1).[9] Opening Br. 13–14. For support, Performance points to a Senate Report that the 2004 Amendment would "requir[e] U.S. Customs . . . to liquidate future drawback claims within a specified period of time,

---

[9] While this appeal concerns deemed liquidation of drawback claims under 19 U.S.C. § 1504(a)*(2)(A)–(B)*, deemed liquidation of entries of merchandise for consumption (also called import entries) arise under 19 U.S.C. § 1504(a)*(1)*. Under 19 U.S.C. § 1504(a)(1), deemed liquidation of import entries occurs within 1 year from the date of entry of the merchandise (unless extended for up to three (3) one-year extensions), and it has been that way since 1978—well before the 2004 legislation that added the provisions at issue here. Opening Br. 12–13 & n.6.

*as U.S. Customs already does for merchandise entered for consumption.*"    S. Rep. No. 108-28 at 172–73 (2003) (emphasis added).  Performance further argues that the Government's position forces its drawback claim to exist "out of the operation of Congress' statutory framework for the liquidation of drawback entries altogether."  Reply Br. 14–15.

The Government disagrees with Performance's interpretation.    While the Government notes § 1504(a)(2)(A) "echoes the singular deemed liquidation provision for import entries under section 1504(a)(1)," "the liquidation of drawback claims is not always cut and dry when the liabilities of the underlying import entries remain outstanding," which is why "Congress addressed this particular scenario unique to drawback claims with the enactment of section 1504(a)(2)(B), which sets forth certain safeguards" *until "all issues concerning the particular import entries have been resolved."    See* Response Br. 30–31 (emphasis added).

The Government emphasizes that its interpretation does not frustrate Congressional purpose.  Although certain drawback claims at the one-year anniversary may be eligible for subparagraph (B), and not (A), and because of that certain "statutory and regulatory safety mechanisms" must be "affirmatively invoked and complied with," that does not take away that drawback claimants do have steps they can take to achieve drawback under § 1504(a)(2)(B).    Response Br. 28–29; Oral Arg. at 19:00–20:32.  Thus, the Government emphasizes there is not a class of drawback claims that are not subject to any time limitation.  Response Br. 28–29.

Performance's maximalist reading of § 1504(a)(2)(A) is unpersuasive.  Ostensibly drawn from legislative history, Performance's argument is contradicted by the text of § 1504(a)(2)(A)'s carveout of "[e]xcept as provided in subparagraph (B)," as well as other indicia of legislative

16                          PERFORMANCE ADDITIVES, LLC v. US

intent. Performance's assertion that the intent was wholly
to expand deemed liquidation mischaracterizes the import
of the legislative history. The law's intent is clearly to
provide *some* limits on deemed liquidation. Certainly, the
2004 Senate Report accompanying the relevant
Amendment noted that "Existing law . . . does not require
the liquidation of drawback claims within a statutory time
frame. As a result, drawback claims are generally not
liquidated by U.S. Customs within a reasonable period of
time." S. Rep. No. 108-28 at 172 (2003). The law changed
to require U.S. Customs "to liquidate future drawback
claims within a specified period of time," *id.* at 173, but it
does not follow, however, that any ambiguities or
interpretative doubts must be resolved in favor of no
limitations on deemed liquidations, as Performance's
argument implies. It is undisputed Congress *expanded* the
opportunities to deem liquidation, but in doing so Congress
imposed limits. Notably, it imposed the "[e]xcept[ion]" for
drawback claims whose import entries had not been
liquidated and become final. 19 U.S.C. § 1504(a)(2)(A)–(B).

Although the legislative history indicates the 2004
Amendment causes deemed-liquidation of drawback
claims "within a specified period of time," it does not
provide a one-year-specific time frame to all claims,
regardless of the status of the underlying import entries.
S. Rep. No. 108-28 at 172–73 (2003). Even in the absence
of affirmative steps by the drawback claimant or Customs,
within certain specified times that are safeguarded by the
statute, import entries will be deemed liquidated (under
§ 1504(a)(1)) and trigger a time limit for the drawback
claims to be deemed liquidated in due course, too (under
§ 1504(a)(2)(A)). The liquidation of a drawback claim
follows finality of import entries, but not necessarily
immediately; with too much delay, in any event, a
drawback claim will be deemed liquidated, as Congress
intended.

## IV.    CONCLUSION

We have considered Performance's remaining arguments, and do not find them persuasive or do not need to reach them.  Therefore, for the foregoing reasons, the decision of the Court of International Trade is:

**AFFIRMED.**